**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0766n.06

**No. 08-6332**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 03, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| PAUL JAMES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| THE GOODYEAR TIRE & RUBBER | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MARTIN, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. Paul James sued his former employer, The Goodyear Tire & Rubber Co. (Goodyear), alleging disability discrimination concerning the circumstances surrounding his cessation of service, and claiming that no legitimate business necessity supported the company's demand that he take a functional capacity evaluation (FCE) meant to determine if he could safely continue to fulfill his duties as a banbury operator despite his progressive multiple sclerosis (MS). Goodyear contends that it required the FCE due to reports by James's co-workers and union representatives concerning his safety, and that the FCE aimed to determine what jobs, if any, James could safely perform. The parties cross-moved for summary judgment, and the district court entered summary judgment in favor of Goodyear. James now appeals.

Because legitimate safety concerns prompted Goodyear's FCE demand, valid business reasons shield Goodyear from having the exam count as the type of adverse job action needed to support a claim under the ADA. Accordingly, we affirm.

## I. Background

From 1987 until September 2004, James worked at a tire manufacturing plant owned by Goodyear, for all relevant times, as a banbury operator. The work environment was industrial and very hot, and his position required physical strength and dexterity. In the first five years of his Goodyear tenure, doctors diagnosed James with progressive MS, but he performed his job without problems for some ten years. By the fall of 2003, however, James's MS symptoms had worsened noticeably. As James conceded in deposition, by then his medications made him feel weak, he experienced problems with gait, balance, and spasticity in his legs, his left-foot drag progressively worsened, and sitting for long periods as well as working around heat bothered him. James insists that, despite these conditions, he could still complete his job duties, citing Goodyear's acknowlegement that he consistently met performance expectations, and that Goodyear never disciplined him for safety issues.

In the summer of 2004, Goodyear management was alerted to concerns about James's safety. James held onto machinery for support when he walked up and down stairs, and his co-workers helped him perform tasks that required climbing stairs or ladders. Because of his difficulty walking, Goodyear employees drove James to and from his work station. A co-worker reported that a passing

forklift might injure James because of his trouble maneuvering. Both union and Goodyear representatives observed James working with what one called "extreme difficulty" and expressed safety concerns.

A series of meetings ensued that prompted James to retire for medical reasons. Initially, union representatives met with James to discuss Goodyear's safety concerns; they told him that the company would require him to take an FCE to determine whether his physical abilities permitted him to continue in his then-current position (or possibly another position), with or without accommodation. If James failed the FCE, the union counseled, Goodyear would most likely terminate him. As an alternative to submitting to the FCE, the union advised James that, like all other disabled employees, he could retire for medical reasons and receive temporary disability benefits (hereinafter, medical retirement), the only option that guaranteed him continuing income. James took the union's advice and accepted medical retirement, but now complains of the unlawfulness of this allegedly false choice and of being singled out for testing based on his disability. The district court granted summary judgment to Goodyear, concluding that James failed to establish that Goodyear's insistence upon an FCE amounted to an adverse employment action, a prerequisite to a successful ADA claim.

We review de novo this grant of summary judgment, affirming if the evidence, viewed in the light most favorable to James, demonstrates that no genuine issue exists as to any material fact and that Goodyear is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Village of Oakwood*

No. 08-6332
*James v. Goodyear*

*v. State Bank & Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Analysis

James's discrimination claim arises under the Americans with Disabilities Act, 42 U.S.C. § 12201, *et seq.* (ADA),[1] which prior to 2008 prohibited discrimination by a covered entity against "a qualified individual with a disability because of the disability of such an individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." § 12112(a). When a plaintiff presents only circumstantial evidence of discrimination, as James does, we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Nance v. Goodyear*, 527 F.3d 539, 553 (6th Cir. 2008). To establish a prima facie case, a plaintiff must show that 1) he is an individual with a disability; 2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; 3) he suffered an adverse employment action; and 4) a nexus exists between the adverse employment action and his disability. *Macy v. Hopkins*, 484 F.3d 357, 364–65 (6th Cir. 2007). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to offer a nondiscriminatory reason for the adverse employment

_____

[1] Plaintiff's complaint references Title VII of the Civil Rights Act of 1964, but he forfeits this claim by failing to raise it on appeal. *Humphrey v. United States Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (citing *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006); *Caudill v. Hollan*, 431 F.3d 900, 915 n. 13 (6th Cir. 2005)).

action. *Nance*, 527 F.3d at 553. If the employer satisfies this burden, the plaintiff must introduce evidence from which a reasonable jury could conclude that the proffered explanation is actually a pretext for unlawful discrimination. *Id*. Thus, the burden as to the ultimate question—whether the defendant discriminated against the plaintiff—remains with the plaintiff. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

In this case, the district court granted summary judgment to Goodyear at the prima-facie-case stage after finding that Goodyear's FCE demand did not constitute an adverse employment action. On appeal, the parties agree that James is disabled, fulfilling the first prima facie element. Both fail to address the other elements. Thus, we must decide only whether James suffered an adverse employment action, defined as a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (alteration in original) (internal quotation marks and citations omitted).

As a preliminary matter, James's pleadings often claim that Goodyear perpetrated an adverse employment action by presenting him with a *choice* between two options: to take an FCE that he would fail, or to take medical retirement. But actually, Goodyear only insisted that continued employment required testing. Thus, in order to prove that Goodyear took an adverse employment action against him, James must show that Goodyear's FCE demand itself constituted the adverse action.

In an effort to do so, James argues that: (1) the demand constitutes an adverse employment

action, in and of itself, even if the exam was valid; and (2) the proposed FCE fails to comply with the ADA. Both claims lack merit.

A valid FCE demand cannot constitute an adverse employment action in general discrimination claims, like the one James brings. In *Burlington Northern & Sante Fe Railway Company v. White*, 548 U.S. 53 (2006), the Supreme Court drew a sharp distinction between retaliation and general discrimination claims, holding that the general discrimination statute defines adverse action more narrowly. *Id*. at 62–63; *compare* 42 U.S.C. § 2000e-2(a) *with* § 2000e-3(a). This narrower adverse-action definition applicable to general discrimination claims does not include an employer's valid demand for a medical examination, as *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 813 (6th Cir. 1999) holds. Thus, James's general discrimination claim—that the FCE demand, even if valid, constitutes an adverse employment action—fails.

James alternatively attempts to establish an adverse action by claiming that Goodyear's demand for the FCE was neither "job-related [nor] consistent with business necessity," thereby violating the ADA. 42 U.S.C. § 12112(d)(4)(A). Under the ADA, the exam's scope must remain appropriately narrow, and the employer must hold a valid rationale for demanding it, requirements that, if met, preclude finding an adverse employment action. *Sullivan*, 197 F.3d at 813.

As to scope, the examination must be "restricted to discovering whether the employee can continue to fulfill the essential functions of the job." *Id.* at 811–12. But because James did not undergo the FCE, "he precluded himself from being able to establish a genuine issue of material fact

as to whether the exam[] [was] related to his job, or [was] too broad in scope." *Id*. at 812. Evidence in the record that may allow us to predict what the exam might have shown does not suffice to raise a genuine issue as to the exam's actual scope. Had James taken the FCE, he could challenge its scope, but he cannot do so now.

Regarding rationale, because Goodyear required the test for valid safety reasons, it "neither count[s] as an adverse job action nor prove[s] discrimination." *Id.* at 813. Concerns about James's safety and the safety of other employees prompted Goodyear to seek a direct-threat assessment, as permitted by the ADA.[2] *EEOC v. Prevo's Family Mkt.*, 135 F.3d 1089, 1095–97 (6th Cir. 1998). This court interprets the ADA to allow an employer making such assessments to consider: "(1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and 4) the imminence of the potential harm." *Id*. at 1095 (citing 29 C.F.R. § 1630.2(r)). Even where general information about the threat level associated with a particular disability exists (*e.g.*, the threat level typical with MS), an employer must rely upon employee- and position-specific information "based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence." *Id*. at 1095–97. In compliance with the ADA, Goodyear required James to undergo testing to assess the potential for harm and the imminence of such harm. The limited, agreed-upon facts regarding James's mobility,

---

[2] The district court occasionally conflated Goodyear's two distinct rationales for requiring James to be examined: that James could not perform the essential functions of his job and that he presented a direct threat. We rely on the direct threat rubric alone.

coupled with reports of prior forklift accidents, provided Goodyear with "evidence sufficient for a reasonable person to doubt" whether James could perform his job without creating a direct safety threat. *Sullivan*, 197 F.3d at 813. Thus, because Goodyear had a valid reason to demand the FCE, it did not perpetrate an adverse employment action under the ADA as a matter of law. *Id*.

Finally, to the extent that James may have raised a constructive discharge claim below, he forfeits it here by raising it in a "perfunctory manner," without "some effort at developed argumentation." *McPherson*, 125 F.3d at 995–96 (internal citations and quotation marks omitted). In fact, the phrase 'constructive discharge' appears only in his conclusory assertion that he presented the topic to the district court. His failure to present the claim in more than a "skeletal way," if at all, leaves us with neither an asserted grounds to find error nor legal argument to analyze it. *Id*. at 995–96. Moreover, even if James properly raised the claim both here and below, it fails on the merits. A lawful FCE demand cannot constitute discrimination. *Sullivan*, 197 F.3d at 813.

## III. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment to Goodyear.