[Cite as *Ames v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-4774.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Diedree Ames, | : | |
| Plaintiff-Appellant, | : | No. 14AP-119 |
| | | (Ct. of Cl. No. 2012-04049) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Rehabilitation and Correction, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on October 28, 2014

*Daniel H. Klos*, for appellant.

*Michael DeWine,* Attorney General, and *Velda K. Hofacker*, for appellee.

APPEAL from the Court of Claims of Ohio

TYACK, J.

{¶ 1} This appeal involves a claim under R.C. 4112.02 and 4112.99 for employment discrimination on the basis of a perceived disability. Plaintiff-appellant, Diedree Ames, appeals the January 14, 2014 judgment of the Court of Claims of Ohio granting summary judgment for defendant-appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"), and denying summary judgment for plaintiff-appellant. For the reasons that follow, we affirm the judgment of the trial court.

**Factual Background**

{¶ 2}    Appellant was a long-term state employee serving as a Senior Parole Officer with ODRC.  Approximately 50 percent of her job duties involved supervising others.  In 2006, appellant's partner committed suicide by means of a gun in appellant's presence at her home.  Because of that event, appellant took approved disability mental health leave due to depression and anxiety.  Co-workers were aware of what had happened.

{¶ 3}    In 2009, appellant's co-workers and supervisors began noticing what they characterized as a pattern of interpersonal conflicts, erratic behavior, and emotional outbursts at work.  Documentation included a number of incident reports filed against appellant for workplace conflict with other employees, including her supervisor.

{¶ 4}    In August 2009, appellant was disciplined for violating the standards of employee conduct related to absenteeism.  In the fall of 2009, appellant was investigated for making an alleged threat on a social network site, Facebook.  While engaged in an extended chat session discussing her work situation appellant stated, "I'll gimp into work tomorrow.  I guess I could just shoot them all...lol!"[1]  She also stated, "Yo! Thanks neighbor.  I'll gimp into work tomorrow.  I guess I could just shoot them all...ARE YOU KIDDING ME? 'MEANING I CAN'T CHASE THEM!' OH MY GOD!  YOU PEOPLE REALLY DO NEED A LIFE!  LIKE NO LAW ENFORCEMENT OFFICER 'EVER' MADE THAT TYPE OF COMMENT.  YOU MAKE ME LAUGH OUT LOUD!"

{¶ 5}    In October 2009, ODRC requested an Independent Medical Examination ("IME") to assess the mental health/emotional stability of appellant and to determine if she was able to perform her job duties.  Appellant was placed on administrative leave with pay at that time, and she was required to surrender her firearm.

{¶ 6}    The psychologist who conducted the examination found no evidence of depression or anxiety.  He stated that her cognitive and social capacities were intact.  He stated that some histrionic and obsessive personality tendencies were present.  He found no evidence of depression, anxiety, or a mood disturbance that would preclude employment.  He stated that "[f]rom a psychological standpoint, Ms. Ames is capable of

---

[1] The fact the statement was made is not in dispute.  The parties dispute whether the comment was a threat or a joke and whether the comment referred to appellant's co-workers or parolees.

employed [sic] consistent with her skills and capacities."   In his opinion, the psychologist stated that appellant was capable of returning to her former occupation.   He suggested counseling to facilitate vocational adjustment.   Appellant returned to work on November 4, 2009, and was issued a two-day fine for the violation of the employee code of conduct.

{¶ 7}   In January 2010, another investigation of appellant began after an anonymous complaint was made that appellant was using her state-issued computer for non-work purposes.   The anonymous complaint was later discovered to be from a co-worker, Parole Officer Jill Brady ("Brady"), who was having a relationship with an ex-domestic partner of appellant.   As a result of the investigation, appellant was given a written reprimand.

{¶ 8}   As a member of a union, appellant grieved both instances of discipline.   Her two-day fine was reduced to a one-day fine.   Upon completion of 24 hours of training within 60 days, her authorization to carry her state-issued firearm would be reinstated. Appellant did not complete the training.

{¶ 9}   In April 2010, Brady, the same co-worker who had anonymously reported appellant, completed an incident report alleging that appellant had sent a text message to Rosemary Llewellyn, appellant's former partner and Brady's current partner.   The message stated: "U and ur new gf r in a shit heap of trouble . . . u should know u will be tracked."

{¶ 10} Appellant filed an incident report against Brady on April 19, 2010, alleging that Brady had used a state computer to access the internet for non-work related purposes.   An investigation was begun.   Both employees were told to have no contact with each other.

{¶ 11} A few days later, Brady notified ODRC that Llewellyn had filed for an order of protection against Ms. Ames.   Apparently, as part of the information provided to get the protective order, Ms. Llewellyn stated that two years previously, in 2008, appellant had held a gun to her head.   Appellant denied such an incident ever took place.

{¶ 12} ODRC scheduled a second IME, this time to discover if appellant had a propensity for violence.   Appellant underwent psychological testing from which the

examiner diagnosed her with generalized anxiety disorder and paranoid personality disorder. The examiner was asked if appellant could provide direction and training to parole officers as well as other duties contained in her job description. The examiner opined that "[t]he personality disorder indicated in the psychological testing and in Ms. Ames' history of on the job conflicts would suggest she would have significant difficulty in supervising others." The IME examiner concluded however, that "there is no psychological reason why Ms. Ames cannot return to her present occupation," but that "if the 'gun-to-the-head' incident of September 2008 is found to be true, I would not recommend that she be returned to her present position." The examiner also stated that "[n]othing in the interview or psychological testing would indicate that Ms. Ames poses a threat to herself or others (again with the exception of the alleged September 2008 incident)."

{¶ 13} ODRC believed the second IME to be incomplete and that it did not address the potential for violence in the workplace. Unsatisfied with the somewhat inconclusive nature of the second IME, a third IME was ordered to "address whether Ms. Ames can return to her current occupation, if doing so would pose a threat to the health or safety of herself or others, her fitness for carrying a weapon, and her ability to supervise offenders." The request stated in pertinent part:

> The initial request was made due to several events causing concern, but the most recent issue was her involvement in a dispute with a co-worker. Due to the dispute, regional administrator issued no contact orders for both parties and referred both employees to The Office of Victim Services (OVS). In evaluating the current situation including past events, OVS determined that the potential for lethality exists. Due to those issues, Ms. Ames was placed on Administrative Leave.

{¶ 14} In a report dated July 13, 2010, the third interviewer, a forensic psychologist, stated: "[A]pparent is this officer's bitterness, none of this though speaking directly to a propensity toward violence." He also found through psychological testing "a profile suggesting a pattern of relational problems in an adult for whom characterologic issues dominate, particularly those suggesting a paranoid personality structure." He further stated that, "[d]iagnostically, there appears an underlying anxiety, possibly some

unresolved depression, but the primary diagnosis necessarily stems from deeply ingrained characterologic features, most noteworthy being the paranoid concerns."

> The third interviewer concluded by stating as follows:

> This third assessment appears sought as previous evaluators have not quantified risk level, specifically for violence in the workplace. Strictly from a psychological perspective, no data appear available to suggest that Ms. Ames is not capable of being returned to her current occupation, and no data exist to suggest that she poses a threat to the health or safety of herself or others, or for that matter, that she is at this point incapable of carrying a weapon, and interacting with co-workers and offenders.

> Misunderstood is the concept of violence risk appraisal. A review of the literature assures that -- the availability of often unhelpful checklists and 'danger assessments' notwithstanding – there is, strictly speaking, no baseline data here to suggest violence risk propensity. Specifically, in discussing a risk toward workplace violence, or the ongoing risk potential of an individual who has acted-out criminally, or who evidences severe psychopathology, necessary are actual events, documented offenses. Here there are no undisputed examples of actual violence. Observational or clinical issues notwithstanding, always preferable are actuarial data in predicting future 'dangerousness.'

> When the literature is reviewed regarding statistical versus clinical risk assessment, it is this absence of known violence that, in my opinion, brings forth the inappropriateness of addressing this concern in any other than an academic format. There can be no 'predictors' if there are no known baseline events.

> Simply because this officer evidences a likely combination of personality disorders, this does not bring forth 'dangerousness.' Realistically, there is no violence risk assessment that allows for more than an overview, no actuarial based assessment that can pinpoint with reasonable certainty future acting-out. In this case, I cannot demonstrate a previous history of violence, and therefore cannot suggest that there exists an actuarially defensible risk level currently.

{¶ 15} In October 2010, while on medical leave, appellant posted an apparent threat against Brady on Yahoo! Messenger stating, "So nice to know I never HAVE to work again.  But I will, just to hold YOU Brady and stank pussy accountable!  Feelin the heat yet?  It's coming.  I promise.  You fucked with the wrong person Brady, your ass is mine!"

{¶ 16} After an investigation in which appellant denied sending the message, but resisted ODRC's efforts to determine if her account had been hacked, Deputy Director of the Division of Parole and Community Service, Sara Andrews, terminated appellant effective January 18, 2011.  The stated reason for termination was violation of ODRC Employee Conduct Rule 18: "[T]hreatening, intimidating, or coercing another employee or a member of the general public," and Rule 24: "[I]nterfering with, failing to cooperate in, or lying in an official investigation or inquiry."

**Procedural Background**

{¶ 17} Appellant filed suit in the Court of Claims of Ohio alleging unlawful employment discrimination on the basis of a perceived disability.  The parties agreed the essential facts were not in dispute, and they filed competing motions for summary judgment.  The trial court awarded summary judgment to ODRC finding that the referrals for IMEs did not constitute evidence that appellant was perceived to have a psychological disability.  The trial court found that reasonable minds could only conclude that the IME referrals represented reasonable attempts to determine whether appellant was a danger in the workplace due to legitimate concerns about her emotional health.  The trial court also found that appellant failed to present evidence that the proffered reason given for termination was a pretext.

**Assignments of Error**

{¶ 18} Appellant assigns the following eight errors for our review:

> 1. The Trial Court failed to construe material facts in a light most favorable to the Appellant by not finding that when the Appellee was provided actual notice that Appellant had significant difficulty to perform 50% of her job duties that this was sufficient to create a perception of disability of the Appellant to perform her job and thus a prima facie case.

2. The Trial Court failed to construe material facts in a light most favorable to the Appellant by finding that when the Appellee was provided actual notice in the second IME that Appellant could safely return to the workplace and posed no threat to herself or others that scheduling her for a third IME was sufficient to create a perception of disability of the Appellant to perform her job.

3. The Trial Court erred and failed to construe material facts in a light most favorable to the Appellant by opining the reason given for scheduling of the third IME, "to follow up and conclusively answer these questions" about "holding a gun to Llewellyn's head" was a legitimate reason and not pretext for perceived disability discrimination.

4. The Trial Court erred and failed to construe material facts in a light most favorable to the Appellant by opining "Plaintiff has not presented probative evidence tending to controvert the proffered reason for the termination of her employment, much less to demonstrate that the true reason was discrimination based upon any real or perceived disability."

5. The Trial Court erred in applying *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992) as the deciding law and standard for comparables in a discrimination case, failing to apply *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, (6th Cir. 1998) and its progeny, *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741 (6th Cir. 2012) to determine comparably serious conduct.

6. The Trial Court erred and failed to construe material facts in a light most favorable to the Appellant by not finding that the explanations for terminating the Appellant by Sara Andrews in her affidavit compared to her deposition testimony recited in Appellant's Motion for Summary Judgment were contradictory, thus dissembling and creating an inference of guilt and pretext.

7. The Trial Court erred and failed to construe material facts in a light most favorable to the Appellant by not finding that the explanations for the third IME request by Sara Andrews as recited in Appellant's Motion for Summary Judgment were considered far beyond the concerns of the ODRC employer by Dr. Tennenbaum thus and [sic] creating a material issue of

fact as to pretext of the legitimacy of the request and inference of guilt.

8. The Court erred when it failed to construe material facts in a light most favorable to the Appellant and concluded "Upon review, reasonable minds can only conclude that Andrews' affidavit testimony demonstrates that the IME referrals represented reasonable attempts to determine whether plaintiff was a danger in the workplace due to legitimate concerns about her emotional health.

{¶ 19} Assignments of error one through four and six through eight all allege the trial court impermissibly construed the evidence and the inferences to be made from the evidence. Assignment of error five concerns a legal standard to apply. We shall address them as follows: Assignments of error one and two concern the evidence of a perceived disability, and we will address them collectively. Assignments of error three through eight concern the issue of pretext, and we will address them as a group as well.

**Summary Judgment Standard**

{¶ 20} An appellate court reviews summary judgment under a de novo standard. *Reed v. Davis*, 10th Dist. No. 13AP-15, 2013-Ohio-3742, ¶ 9. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists; (2) the moving parties are entitled to judgment as a matter of law; and (3) reasonable minds viewing the evidence most strongly in favor of the nonmoving party could reach but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56; *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, ¶ 11.

{¶ 21} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Id.* at ¶ 12, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th

Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 22} " 'Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party.' " *Vossman v. AirNet Sys.*, 10th Dist. No. 12AP-971, 2013-Ohio-4675, ¶ 13, quoting *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). " 'Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion.' " *Vossman* at ¶ 13, quoting *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

**Ohio Disability Discrimination Law**

{¶ 23} Under R.C. 4112.02(A), it is unlawful for an employer to refuse to hire or discriminate against a person because of his or her disability. " 'Disability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).

{¶ 24} "[U]nder the plain language of R.C. 4112.01(A)(13), a plaintiff may be disabled if their employer regarded them as having a mental or physical impairment, without regard to whether the employer regarded them as substantially limited in their daily life activities as a result." *Dalton v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 13AP-827, 2014-Ohio-2658, ¶ 24, citing *Scalia v. Aldi, Inc.,* 9th Dist. No. 25436, 2011-Ohio-6596, ¶ 24.

{¶ 25} To prevail on an employment-discrimination claim, a plaintiff must prove discriminatory intent. *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 583 (1996). A plaintiff may prove discriminatory intent through either direct or indirect evidence. *Turner v. Shahed Ents.*, 10th Dist. No. 10AP-892, 2011-Ohio-4654, ¶ 11. A plaintiff may establish a prima facie case of disability discrimination directly by presenting evidence of

any nature to show that the employer more likely than not was motivated by discriminatory intent. *Id.* In the absence of direct evidence, a plaintiff may establish a prima facie case indirectly by means of the burden shifting analysis articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

{¶ 26} Here, in order for appellant to establish a prima facie case of perceived disability discrimination, she must demonstrate that: (1) ODRC perceived her as disabled, (2) ODRC took an adverse employment action because of her perceived disability, and (3) appellant can safely and substantially perform the essential functions of the position in question. *Peters v. Ohio Dept. of Natural* Resources, 10th Dist. No. 03AP-350, 2003-Ohio-5895, ¶ 22-23; *see also Hood v. Diamond Products, Inc.*, 74 Ohio St.3d 298 (1996), syllabus; *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571 (1998). Even if appellant is not disabled, she is still protected by the disability discrimination laws if appellee perceived her as disabled. *Peters* at ¶ 23; *McGlone* at 572. Ohio disability discrimination law is similar to the Federal Americans with Disabilities Act ("ADA"), and therefore Ohio courts may seek guidance in the interpretation of the Ohio disability discrimination law from regulations and cases that interpret the ADA. *Id.* at 573; *Dalton* at ¶ 28.

{¶ 27} If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Turner* at ¶ 14. If an employer meets its burden of production, a plaintiff must prove by a preponderance of the evidence that the employer's reason was merely a pretext for unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The ultimate burden of persuasion always remains with the plaintiff. *Id.* at 256. In order to show pretext, a plaintiff must show both that the reason was false, and that discrimination was the real reason. *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 14; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

**Perceived Disability**

{¶ 28} Here, appellant is unable to demonstrate a prima facie case of discrimination because she cannot establish the first prong of the prima facie case.

{¶ 29} Appellant argues that the decision to send appellant to three IMEs is evidence that they perceived her as disabled.  However, "[b]oth Ohio and federal courts have concluded that merely sending an employee to an IME, or other type of fitness for duty examination, does not amount to evidence that the employer perceived the employee as disabled." *Dalton* at ¶ 31, citing *Peters* at ¶ 24; *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 808 (6th Cir.1999); *James v. Goodyear Tire & Rubber Co.*, 354 Fed.Appx. 246, 249 (6th Cir.2009); *Mickens v. Polk Cty. School Bd.*, 430 F.Supp.2d 1265, 1274 (M.D. Fla.2006); *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir.1996).

{¶ 30} Appellant is asking us to infer that because ODRC scheduled appellant for not one, but three IMEs, this must be evidence they regarded her as disabled.  We do not find that to be a reasonable inference from the evidence before us.

{¶ 31} The three IMEs were sought because ODRC believed that appellant had exhibited behavior that made her potentially dangerous or lethal in the workplace.  The first IME was ordered as a result of a threat (whether joking or not) to "shoot them all." The second IME was a result of an escalating situation involving charges and counter charges between appellant and Brady who was involved with an ex-domestic partner of appellant.  Once Brady informed ODRC that appellant's ex-partner had applied for an order of protection, ODRC believed a potential for violence existed, not an unreasonable assumption.  The third IME was ordered because ODRC did not feel the second evaluator supplied any useful information about the potential for violence.  Even though the third evaluator indicated that, without more data, such a projection was not possible, it was reasonable for ODRC to try to assess the situation given appellant's history with Brady and a pattern of getting into interpersonal conflicts with other ODRC employees. Moreover, appellant herself stated in her brief that "[t]he three IME assessments were all sought because the Defendant believed that the Plaintiff presented behavior that made her potentially dangerous and lethal in the workplace."  (Appellant's brief, at 52.)

Therefore, appellant cannot establish that ODRC perceived her to be disabled because it ordered multiple IMEs.

{¶ 32} Nor do the IMEs themselves provide evidence that appellant was disabled or perceived to be disabled. All three examiners found that, from a psychological standpoint, appellant was capable of resuming her duties. The second and third examiners found appellant had certain paranoid personality features, but neither of them stated that appellant could not resume her regular employment. The undisputed facts are that every time ODRC received a report, she was cleared for duty by the examiners and permitted to return to work. ODRC never received information that appellant suffered from a mental impairment that prevented her from performing her job duties.

{¶ 33} The IMEs were ordered in response to appellant's behavior, not a perceived disability. Appellant cannot establish that she was regarded as disabled under R.C. 4112.01(13), and therefore cannot meet the first prong of a prima facie case alleging indirect evidence of discrimination. The first three assignments of error are overruled.

{¶ 34} Assuming for purposes of argument that appellant has established the first prong of the prima facie case, ODRC set forth a legitimate nondiscriminatory reason for termination, namely violation of ODRC Employee Conduct Rules 18, "[t]hreatening, intimidating, or coercing another employee or member of the general public," and Rule 24 "[i]nterfering with, failing to cooperate in, or lying in an official investigation or inquiry."

{¶ 35} In this case, appellant is attempting to show that the reason offered by ODRC for terminating her was a pretext. Evidence is relevant to establishing pretext if it tends to show that the defendant's reason for the adverse employment decision was less probable because the reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was an insufficient basis for the adverse employment action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *abrogated on other grounds* by *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009), as recognized in *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir.2009).

{¶ 36} Here, appellant contends that Sara Andrews, the person who ultimately terminated appellant, was forgetful and dissembling in her deposition testimony as contrasted with her affidavit testimony. Based upon our review of the deposition, we

agree that Andrews at times could not recall specific details such as whether or not appellant was on administrative leave, what specific emotional outbursts took place, or what, if anything, led Andrews to believe appellant had the potential to be lethal.

{¶ 37} The difficulty with this argument is that the reason given for appellant's termination was not the IMEs or even because she had the potential to be lethal. Appellant was terminated for specific conduct that took place *after* the third IME and can only be reasonably construed as a threat against Brady when she stated, "...So nice to know I never HAVE to work again. But I will, just to hold YOU Brady and stank pussy accountable! Feelin the heat yet? It's coming. I promise. You fucked with the wrong person Brady, your ass is mine!" There is no other reasonable inference that can be made from that statement other than appellant threatened Brady.

{¶ 38} Appellant argues the statement can be interpreted as a threat to pursue legal action against Brady. Even if true, the employee conduct rule at issue states that an employee can be immediately terminated for "[t]hreatening, intimidating or coercing another employee or a member of the general public." It does not specify that the threat must be to kill someone. Again, appellant did not have to threaten to kill Brady in order to threaten Brady.

{¶ 39} While Andrews herself did not have complete recall of the details of the various investigations and IMEs, the record itself contains a great deal of documentation as to the incidents that led to ODRC requesting IMEs as well as the final culminating incident that led to termination.

{¶ 40} Appellant next argues that ODRC's reason for termination must be pretextual because a comparably situated employee was not disciplined for engaging in similar conduct. Appellant contends that another employee, Parole Officer Sheri Blackburn, made similar statements on her self-evaluation for a performance review. Sheri Blackburn's supervisor, Angelika Manz sent Blackburn an email advising her that her performance evaluation was due and asking her to provide three goals for the next reporting period. Blackburn responded with the following email:

> *Ok here are my 3 goals*:
>
> *1) Try to maintain my stress level and keep my anger in check against these low lifes we half (sic) to deal with.*

> *Especially when they have more toys than me and eat better than me.*
>
> *2) Try not to shoot anyone unless absolutely necessary. Especially when I hear them brag about the above.*
>
> *3) And above all, go home alive everyday to watch my crappy TV, eat ramen noodles and pot pies, and check my email on my crappy computer.*
>
> *3 more are forthcoming.* ☺"

(Emphasis sic.)

{¶ 41} Appellant argues that Blackburn's situation evinces comparable conduct for which appellant was terminated, but Blackburn was not disciplined. Appellant has also filed a motion to strike a portion of ODRC's brief that indicates Blackburn was in fact disciplined for her conduct.

{¶ 42} The United States Court of Appeals for the Sixth Circuit has stated: "Discrimination cases frequently turn on whether the plaintiff can identify one or more comparators who are similarly situated in all relevant respects." *Bobo v. United Parcel Svc. Inc.,* 665 F.3d 741, 753 (6th Cir.2012). Appellant did not have to show an exact correlation between herself and another similarly situated employee; rather, she had to show only that she and her proposed comparator were similar in all *relevant* respects, *and* that she and her proposed comparator engaged in acts of comparable seriousness. *Id.* at 751.

{¶ 43} Appellant cannot show that she and Blackburn engaged in acts of comparable seriousness. Appellant was not terminated for the "I guess I could just shoot them all...lol!" comment which is most similar to Blackburn's "try not to shoot anyone" comment. Appellant's termination was a second offense for similar conduct. Thus, her termination came with a backdrop of a prior incident of posting an inappropriate message on social media, a history of ill will, charges and counter charges against Brady, and finally posting a vulgar, threatening statement toward a co-worker under her supervision. Blackburn had no history of making similar statements and no pattern of conflict with co-workers.

{¶ 44} Blackburn's conduct was not of comparable seriousness to appellant's conduct. Therefore, the issue of what, if any, discipline Blackburn received is moot and the motion to strike is denied.

{¶ 45} Because appellant failed to demonstrate a genuine issue of material fact remains as to whether ODRC's proffered legitimate, nondiscriminatory reason for appellant's termination was merely a pretext for impermissible discrimination, the Court of Claims properly granted summary judgment to ODRC. Appellant's fourth through eighth assignments of error are overruled.

{¶ 46} In sum, appellant failed to establish that she was perceived as disabled, and failed to establish that the reason for her termination was a pretext for discrimination. Accordingly, the motion to strike is denied and we overrule appellant's eight assignments of error and affirm the judgment of the Court of Claims of Ohio.

*Motion to strike denied; Judgment affirmed.*

SADLER, P.J., and CONNOR, J., concur.

————————————