| | |
|---|---|
| BEVERLY TWEEDY | Case No. 2019-00464JD |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Holly True Shaver |
| v. | |
| | DECISION |
| OHIO DEPARTMENT OF YOUTH SERVICES | |
| Defendant | |

{¶1} On March 9, 2020, defendant filed a motion for summary judgment pursuant to Civ.R. 56(C). On April 22, 2020, plaintiff filed a response in opposition to defendant's motion for summary judgment. On April 29, 2020, defendant filed a reply and motion for leave to file a long reply brief, which is GRANTED, instanter. The motion for summary judgment is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D). For the reasons stated below, defendant's motion for summary judgment shall be granted.

**Standard of Review**

{¶2} Motions for summary judgment are reviewed under the standard set forth in Civ.R. 56(C), which states, in part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary

judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). To meet this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C). *Id.* at 292-293.

{¶3} If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden outlined in Civ.R. 56(E), which states, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

**Factual Background**

{¶4} Plaintiff brings claims for employment discrimination based upon her race, age, and gender in violation of R.C. 4112. According to the complaint, plaintiff is a fifty-five-year-old black female who was employed as a Youth Specialist at defendant's Indian River facility which houses felony level youth offenders. Plaintiff alleges that defendant unlawfully terminated her employment following a physical altercation with a youth (hereinafter referred to as, "Youth A"). Plaintiff further alleges that her termination was pretext for unlawful discrimination.

{¶5} Plaintiff was employed by defendant as a Youth Specialist in June of 2015. (Darnell Aff., ¶ 2.) As a condition of her employment, plaintiff was required to serve a probationary period of one year. *Id.* At the time of the altercation and plaintiff's

termination, plaintiff was a probationary employee.[1]  *Id.*  Plaintiff testified that she was assigned to work in the Delta unit (D unit).  (Tweedy Depo., p. 21.)

{¶6} Plaintiff recounted that she had many incidents with Youth A in the D unit which she documented in various Youth Behavior Incident Reports (YBIR) that were submitted to her supervisor, Melvin Gonzalez.  *Id.* at p. 10-11.  According to plaintiff, Gonzalez undermined her documentation of the incidents on multiple occasions.  *Id.* at p. 36-38, 42.  Further, plaintiff testified that she overheard another employee, Tristano, state that he heard Gonzalez state that he wanted "women off of the ward."  *Id.* at p. 74-75.  However, plaintiff admitted that she did not hear any comments regarding her age, race, or sex directly from Gonzalez.  *Id.*

{¶7} Additionally, plaintiff testified that she believed that Gonzalez protected Youth A from her discipline.  *Id.* at p. 42-44.  Plaintiff testified that, prior to the incident between herself and Youth A, other Youth Specialists had physical altercations with Youth A.  *Id.* at p. 12-14.  According to plaintiff, Gonzalez's preferential treatment of Youth A was also observed by other Youth Specialists.  *Id.* at p. 57.  Plaintiff testified that she had no issues with other supervisors regarding perceived preferential treatment of Youth A.  *Id.* at p. 47, 91-99.  Plaintiff testified that she had no prior discipline history before the incident with Youth A.

{¶8} Plaintiff testified that, on the day of the incident with Youth A, she was assigned to work in the D unit.  *Id.* at p. 10-11.  Plaintiff was working a double shift and Youth A's behavior had been difficult that day.  *Id.*  Youth A approached plaintiff at the desk and began arguing with her.  *Id.* at p. 107.  At this time, plaintiff attempted to distance herself from Youth A, but he kept "reengaging."  *Id.*

{¶9} Leading up to the altercation, plaintiff again tried to distance herself by placing her hand out, but Youth A responded by sticking his tongue out and threatening

---

[1]For the purposes of this motion, plaintiff concedes that she was a probationary employee at the time of her termination.

to lick plaintiff's hand. *Id.* Plaintiff stated to Youth A, "[s]tep away. If you lick my finger, I'll constitute that as an assault." *Id.* According to plaintiff, Youth A then licked her finger and she responded by punching him. *Id.* Plaintiff testified that she feared for her life and that punching Youth A was a reflexive and instinctual reaction. *Id.* at p. 107, 111. Plaintiff admitted that she did not use her radio to call for backup. *Id.*

{¶10} Defendant submitted a video of the altercation. (Defendant's Exhibit E.) Although difficult to view at times, the video appears to support plaintiff's recitation of the events on the day of the incident.[2] Additionally, plaintiff was interviewed by Gonzalez following the incident. (Tweedy Depo., p. 16; Defendant's Exhibit A.) During this interview, plaintiff admitted to "instinctively" punching Youth A and stated that she perceived him to be a threat because he was both significantly taller than she was and weighed more than she did.

{¶11} Following the incident, defendant relocated plaintiff from the D unit. James Darnell, Superintendent at Indian River, testified that he reviewed the video and determined that a recommendation of removal for plaintiff was appropriate. (Darnell Depo., p. 59-60.) Darnell further testified that completing an investigation is not required prior to removing a probationary employee. *Id.* Darnell confirmed that both Garret Lones and Jennifer Fannin-Mullin, individuals who plaintiff asserts engaged in similar conduct with youth, were non-probationary employees at the time of their incidents. (*Id.;* Darnell Aff., ¶ 11-12.)

{¶12} Darnell testified that Gary Hart, the facility intervention administrator at Indian River, reviewed the video of the incident between plaintiff and Youth A. (Darnell

---

[2]The video shows plaintiff working in the day room leading up to the incident when Youth A approaches her. Plaintiff and Youth A are engaged in a conversation and a verbal altercation ensues. Plaintiff then turns her back and walks away from Youth A. Youth A then follows plaintiff and begins arguing with her again. Although difficult to view from the video, it appears that Youth A moves his face toward plaintiff's outstretched hand. Immediately after Youth A moves his face toward plaintiff's hand, plaintiff uses her hand to strike Youth A in the face. Shortly thereafter, another Youth Specialist comes into view and separates Youth A from plaintiff.

Depo., p. 65.)   Darnell further testified that Mr. Lane, the operations administrator, reviewed the Use of Force packet regarding the incident.  (*Id.;* Darnell Aff., ¶ 6.)  Darnell further testified that Direct Deputy Gunn-Hill would have also reviewed the process.  *Id.* Darnell testified that after reviewing the video and discussing with Hart, Lane, and Gunn-Hill, the decision was made to recommend removal of plaintiff from her probationary position.  *Id.*  A letter was then drafted and sent to Director Harvey Reed's office.  *Id.*  Plaintiff was later notified that she was terminated pursuant to Article 6.01 of the collective bargaining agreement which provides the employer with the "sole discretion" to discharge a probationary employee.   (Darnell Aff., ¶ 8; Defendant's Exhibit D.)   Darnell described plaintiff's conduct as "indefensible."   (Darnell Depo., p. 67.)  Following plaintiff's termination, another probationary employee was rotated into the D unit.  Darnell testified that he did not know who filled plaintiff's position as the post would have been bid on based upon seniority.  *Id.* at p. 33.

**Law and Analysis**

{¶**13**} R.C. 4112.02 states, in part:

It shall be an unlawful discriminatory practice:

(A)     For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

"Because R.C. Chapter 4112 is Ohio's counterpart to Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code ('Title VII'), the Supreme Court of Ohio has acknowledged that federal authority interpreting Title VII is generally applicable to cases alleging violations of R.C. Chapter 4112."  *Mowery v. Columbus,* 10th Dist. Franklin No. 05AP-266, 2006-Ohio-1153, ¶ 41.

{¶14} "'To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent' and may establish such intent through either direct or indirect methods of proof." *Dautartas v. Abbott Labs.*, 10th Dist. Franklin No. 11AP-706, 2012-Ohio-1709, ¶ 25, quoting *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766, 729 N.E.2d 1202 (10th Dist.1998). Here, plaintiff's theory is that discriminatory intent may be established through the indirect method, which is subject to the burden shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Nist v. Nexeo Solutions, LLC*, 10th Dist. Franklin No. 14AP-854, 2015-Ohio-3363, ¶ 31.

{¶15} "Under *McDonnell Douglas*, a plaintiff must first present evidence from which a reasonable jury could conclude that there exists a prima facie case of discrimination." *Turner v. Shahed Ents.*, 10th Dist. Franklin No. 10AP-892, 2011-Ohio-4654, ¶ 11-12. "In order to establish a prima facie case, a plaintiff must demonstrate that he or she: (1) was a member of the statutorily protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside the protected class or that the employer treated a similarly situated, non-protected person more favorably." *Nelson v. Univ. of Cincinnati,* 10th Dist. Franklin No. 16AP-224, 2017-Ohio-514, ¶ 33; *Sheridan v. Jackson Twp. Div. of Fire*, 10th Dist. Franklin No. 08AP-771, 2009-Ohio-1267, ¶ 5.

{¶16} "If the plaintiff meets her initial burden, the burden then shifts to the defendant to offer 'evidence of a legitimate, nondiscriminatory reason for' the adverse action. * * * If the defendant meets its burden, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason was actually a pretext for unlawful discrimination." *Turner* at ¶ 14. "The ultimate burden of persuasion always remains with the plaintiff. * * * In order to show pretext, a plaintiff must show both that the reason was false, and that discrimination was the real reason." *Ames v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-4774, 23 N.E.3d 162, ¶ 27 (10th Dist.). A plaintiff can

establish pretext by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the employer's conduct, or (3) was insufficient to warrant the challenged conduct. *Pla v. Cleveland State University*, 10th Dist. Franklin No. 16AP-366, 2016-Ohio-8165, ¶ 22. As a general rule, the court will not substitute its judgment for that of the employer and will not second-guess the business judgment of employers regarding personnel decisions. *Kirsch v. Bowling Green State Univ.,* 10th Dist. Franklin No. 95API11-1476, 1996 Ohio App. LEXIS 2247 (May 30, 1996). Additionally, in a discrimination case, the court must examine the employer's motivation, not a plaintiff's perceptions. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987).

{¶17} Defendant argues that plaintiff cannot prove her prima facie case of race, gender, or age discrimination because plaintiff cannot prove that her position was filled by a member outside the protected class or that a similarly situated probationary employee who engaged in the same conduct was treated more favorably than she was under similar circumstances. Plaintiff does not provide sufficient evidence that an individual outside the protected class replaced her. Instead, plaintiff asserts that Garrett Lones, a white male, and Jennifer Fannin-Mullins, a white female, engaged in similar conduct but were not terminated. Defendant argues that Lones and Fannin-Mullins are not valid comparators to plaintiff because they were not probationary employees at the time and were subject to progressive discipline outlined in the collective bargaining agreement.

{¶18} Upon review, the court finds that plaintiff cannot state a prima facie case of race, gender, or age discrimination as she cannot prove that a similarly situated employee was treated more favorably than she was. As plaintiff acknowledged in her deposition and concedes in her response in opposition to defendant's motion for summary judgment, when she started in the role of Youth Specialist she was required to serve a standard probationary period, and she was still serving her probationary period when defendant terminated her employment. Darnell, in his affidavit, also notes that

plaintiff was a probationary employee and was, therefore, not subject to the progressive discipline system that applies to defendant's non-probationary employees. (Darnell Affidavit, ¶ 5.) "Federal courts have frequently noted that probationary employees are not similarly situated to their non-probationary co-workers * * *." *Mowery*, 2006-Ohio-1153, at ¶ 46, citing *White v. Ohio*, 2 Fed.Appx. 453, 457 (6th Cir.2001). There is no suggestion that Lones, Fannin-Mullins, or any other employee to whom plaintiff compares herself for that matter, was a probationary employee. (Darnell Aff., ¶ 10-11.) Because plaintiff has not presented evidence that defendant treated her less favorably than similarly situated probationary employees, she has not established a prima facie case of race, gender, or age discrimination under R.C. 4112.

{¶19} Since plaintiff is unable to establish a prima facie case of discrimination, the court need not consider whether defendant's proffered reasons for terminating plaintiff's employment were pretext for discrimination. *See Alexander v. Columbus State Community College*, 2015-Ohio-2170, 35 N.E.3d 949, ¶ 46 (10th Dist.). However, even if plaintiff could establish a prima facie case of discrimination, the court finds that defendant has proffered a legitimate, non-discriminatory reason for terminating her employment: punching a youth in the face, which is an unauthorized use of force. (Darnell Aff., ¶ 5-6.)

{¶20} "Once a plaintiff establishes a prima facie case, the employer is required to set forth some legitimate, non-discriminatory basis or bases for its action." *Bogdas v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-466, 2009-Ohio-6327, ¶ 9. "If the employer is able to meet this burden, the plaintiff is then afforded an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id.* "The ultimate burden of persuasion always remains with the plaintiff. * * * In order to show pretext, a plaintiff must show both that the reason was false, and that discrimination was

the real reason." *Ames v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-4774, 23 N.E.3d 162, ¶ 27 (10th Dist.).

{¶21} Upon review of the evidence, the court finds that plaintiff has failed to present evidence that the legitimate, non-discriminatory reason for her termination had no basis in fact, did not actually motivate defendant's decision to terminate her employment, or was insufficient to warrant her termination. *See Pla, supra.* Plaintiff admitted that Youth A licked her finger and she reacted by punching him. Furthermore, as Darnell testified, and plaintiff admitted, plaintiff was trained on defendant's use of force policies. (Darnell Aff., ¶ 3; Tweedy Aff., ¶ 10.) In addition, plaintiff does not dispute that she was a probationary employee at the time of her termination, and, as such, she was not subject to progressive discipline as set forth in the collective bargaining agreement. The only reasonable conclusion is that defendant terminated plaintiff's employment because she used unauthorized force on a youth, and that because she was a probationary employee, her employment could be terminated without regard for the progressive discipline procedures set forth in the collective bargaining agreement. Although plaintiff argues at length the distinction between excessive and unauthorized use of force, the court finds the distinction irrelevant to the question of whether plaintiff's removal was pretext for unlawful discrimination. Darnell testified that the force plaintiff used on Youth A was impermissible per defendant's policies governing use of force. (Darnell Aff., ¶ 5-6.) Furthermore, "slapping, punching, hitting, or kicking" is listed as a "Prohibited Use of Physical Response" per defendant's own policies. (See ODYS SOP 301.05.01 p. 6 attached to plaintiff's memorandum contra.)

{¶22} Moreover, although plaintiff testified to statements allegedly made by her supervisor, Gonzalez, that he wanted to get "the women off of the ward," plaintiff's only knowledge of that comment came from another employee and is not incorporated into a properly sworn affidavit pursuant to Civ.R. 56(E). Plaintiff admitted that she never

personally observed Gonzalez make any comments regarding her race, age, or gender. Other than plaintiff's own assertions, there is no evidence to suggest that Gonzalez had any influence or decision-making authority in terminating her employment.

{¶23} Alternatively, plaintiff argues that Darnell acted as a "cat's paw" to influence Director Reed to terminate her employment. A "cat's paw" is a person used by another to accomplish the other's purposes. *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir.2006). In the employment context, an unbiased decisionmaker is a cat's paw in situations where a biased subordinate, who lacks decision making power, uses the unbiased decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory or retaliatory employment action. *Id.* An employer may be held liable under a cat's paw theory of liability "'[w]hen an adverse * * * decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias.'" *Bishop v. Ohio Dept. of Rehab. & Corr.*, 529 Fed.Appx. 685, 2013 U.S. App. LEXIS 13994 (6th Cir.2013), quoting *Arendale v. Memphis*, 519 F.3d 587, 604 (6th Cir.2008), fn. 13.

{¶24} Upon review the court finds that the record is devoid of any evidence that Darnell possessed any impermissible bias against plaintiff or that he influenced Director Reed to terminate her. Darnell testified that after reviewing the video of the incident between plaintiff and Youth A, he determined her actions were indefensible and determined that plaintiff's actions constituted unauthorized use of force and removal was appropriate. Plaintiff has failed to offer any evidence to suggest that Darnell harbored any impermissible bias against her other than her own conclusory allegations that, because Darnell was trusted by Reed and she had no prior discipline, he must have influenced Reed to terminate her. The court finds that, upon reviewing the video of the incident where plaintiff punched Youth A, Darnell made the decision to recommend removal for plaintiff in accordance with defendant's policies and, given that plaintiff was a probationary employee at the time, defendant had the right to remove her

from her position for any reason.  Accordingly, the court finds that there are no issues of material fact regarding whether defendant's legitimate non-discriminatory reason for terminating plaintiff's employment was pretext for discrimination.

## Conclusion

{¶25} Based upon the foregoing, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law.  As a result, defendant's motion for summary judgment shall be granted.

_____
PATRICK M. MCGRATH
Judge

[Cite as *Tweedy v. Ohio Dept. of Youth Servs.*, 2020-Ohio-3944.]

| BEVERLY TWEEDY | Case No. 2019-00464JD |
|---|---|
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Holly True Shaver |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF YOUTH SERVICES | |
| Defendant | |

{¶26} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

Filed June 24, 2020
Sent to S.C. Reporter 8/4/20