[Cite as *Carnahan v. Morton Bldgs. Inc.*, 2015-Ohio-3528.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

SAMUEL N. CARNAHAN,

    PLAINTIFF-APPELLANT,        CASE NO. 11-14-04

    v.

MORTON BUILDINGS, INC.,        O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Paulding County Common Pleas Court
Trial Court No. CI-12-134

Judgment Reversed and Cause Remanded

Date of Decision: August 31, 2015

APPEARANCES:

    *William J. O'Malley* for Appellant

    *Michelle J. Sheehan and Laurie J. Avery* for Appellee

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Samuel N. Carnahan ("Carnahan") brings this appeal from the judgment of the Court of Common Pleas of Paulding County granting summary judgment to defendant-appellee Morton Buildings, Inc. ("Morton"). For the reasons set forth below, the judgment reversed.

{¶2} Carnahan began working for Morton in May of 2008. Doc. 1. In March of 2011, Carnahan was promoted from crew leader to the position of crew foreman. *Id.* In August of 2011, Carnahan and his crew were working on constructing a pole barn on a farm in Missouri. *Id.* The manager of the property offered to take the crew on an ATV tour of the farm. *Id.* During the tour, Carnahan fell from the ATV and suffered severe head trauma. *Id.* Carnahan was life-flighted to a hospital in St. Louis where a portion of his skull and a portion of his temporal lobe had to be removed due to brain swelling. *Id.* Carnahan spent two weeks in the ICU and was then transported to the hospital's in-patient rehabilitation unit where he remained until September 28, 2011. *Id.* Carnahan was then released and permitted to return to Ohio. *Id.*

{¶3} Upon Carnahan's return to Ohio, he underwent numerous therapies under the care of his family physician. *Id.* Carnahan's recovery went well and his physician, after consultation with Carnahan's neurosurgeon and physical therapist,

authorized him to return to work for reduced hours as of January 2, 2012, with a return to normal after two weeks. *Id.* Carnahan's doctor placed no restrictions on Carnahan after the initial two weeks of reduced time. *Id.* Morton refused to allow Carnahan to return to work during the initial two week period of reduced hours. *Id.* Once the time was up, Morton again refused to allow Carnahan to return to work until he had been reviewed by Morton's neurosurgeon, Dr. Prasad Policheria ("Policheria") for a fitness for duty examination. *Id.* Policheria determined that Carnahan could not perform the duties of crew foreman absent certain restrictions. *Id.* Morton then terminated Carnahan's employment based upon Policheria's report that Carnahan could not fulfill the duties of his job without accommodation. *Id.*

{¶4} On July 3, 2012, Carnahan filed a complaint alleging that Morton had terminated his employment based upon his disability or upon a perceived disability pursuant to R.C. 4112.99. *Id.* On September 5, 2012, Morton filed a motion to dismiss for failure to state a cause of action. Doc. 15. Carnahan filed his memorandum contra to the motion to dismiss on September 24, 2012. Doc. 17. The trial court overruled the motion to dismiss on December 31, 2012. Doc. 19. Morton then filed its answer to the complaint on January 23, 2013. Doc. 20.

{¶5} On February 7, 2014, Morton filed its motion for summary judgment. Doc. 33. Carnahan filed his memorandum in opposition to the motion for

summary judgment on March 10, 2014. Doc. 44. Morton then filed a reply brief on March 26, 2014. Doc. 45. On April 23, 2014, the trial court granted Morton's motion for summary judgment. Doc. 48. Carnahan filed his notice of appeal on May 22, 2014. Doc. 54. On appeal, Carnahan raises one assignment of error.

> **The trial court erred [when] it granted summary judgment to [Morton] on [Carnahan's] claim of disability discrimination.**

{¶6} The sole assignment of error is that the trial court erred in granting Morton's motion for summary judgment.

> **An appellate court reviews a trial court's summary judgment decision de novo, independently and without deference to the trial court's decision.** ***Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶ 5, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 8. Summary judgment is appropriate only "when the requirements of Civ.R. 56(C) are met."** ***Adkins v. Chief Supermarket*, 3d Dist. No. 11-06-07, 2007-Ohio-772, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ.R. 56(C);** ***Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, at paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *."** ***Id.*, at ¶ 8, 653 N.E.2d 1196, citing *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant.** ***Jacobs*, at 7, 663 N.E.2d 653.**

> **The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond."** *Mitseff v. Wheeler* **(1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ.R. 56(C)."** *Id.* **at 115, 526 N.E.2d 798, citing** *Harless v. Willis Day Warehousing Co.* **(1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, citing** *Hamlin v. McAlpin Co.* **(1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781;** *Dresher v. Burt* **(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *."** *Dresher,* **at 294, 662 N.E.2d 264.**

*Lillie v. Meachem*, 3d Dist. Allen No. 1-09-09, 2009-Ohio-4934, ¶21-22. The trial court did not provide any basis for its ruling, instead merely stating that Morton's motion for summary judgment was granted.

{¶7} Carnahan brought a claim for disability discrimination pursuant to the Ohio Civil Rights Act. Carnahan appears to allege 1) that he suffers from a disability, or in the alternative 2) that Morton believed that he suffered from a disability and that he was fired for one of these reasons. R.C. 4112.02 provides in pertinent part as follows.

> **It shall be an unlawful discrimination practice:**
>
> **(A) For any employer, because of the * * * disability * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment.**

R.C. 4112.02. The term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). Since Ohio's disability discrimination statute is similar to the federal Americans with Disabilities Act ("ADA"), we can look to federal cases for guidance in interpreting the Ohio statute. *Columbus Civ. Serv. Comm. V. McGlone*, 82 Ohio St.3d 569, 573, 1998-Ohio-410, 697 N.E.2d 204 and *Barreca v. Travco Behavioral Health, Inc.*, 11th Dist. Trumbull No. 2013-T-0116, 2014-Ohio-3280.

> **To establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question.**

*McGlone, supra* at 571. A person can gain the protection of the disability discrimination laws even if he or she is not disabled if the employer regards the person as being disabled. *Id*. at 572.

{¶8} Here, Carnahan does not argue that he was in fact suffering from a disability. In his brief, Carnahan states that he suffered a traumatic injury, but also

indicated that he had a remarkable recovery. Carnahan does not point to any instance where a physical or mental impairment "substantially limits" a major life activity. On the contrary, the evidence presented by Carnahan indicates that he is not limited in his ability to perform major life activities such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working". Carnahan's doctor released him to return to work without restriction. Thus, there was no evidence presented to the trial court to indicate that a genuine issue of material fact existed regarding whether Carnahan was actually disabled. The undisputed evidence indicates that there was no actual disability. The trial court therefore did not err in granting summary judgment as to this claim.

{¶9} However, there was evidence presented that indicated that there may be a genuine issue of material fact regarding whether Morton perceived Carnahan as having a physical or mental impairment.

> **(16)(a) Except as provided in division (A)(16)(b) of this section, "physical or mental impairment" includes any of the following:**
>
> **(i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine;**
>
> **(ii) Diseases and conditions, including, but not limited to, orthopedic, visual, speech, and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, human immunodeficiency virus**

> **infection, mental retardation, emotional illness, drug addiction, and alcoholism.**

R.C. 4112.01(A)(16)(a). Although the Supreme Court of Ohio has not specifically addressed the "regarded as" prong of the definition of disability as set forth under Ohio law, a similar version in federal law has been addressed by the federal courts. In *Wells v. Cincinnati Children's Hosp. Med. Ctr.,* 860 F.Supp.2d 469, 478, (S.D. Ohio 2012), the district court of the Southern District of Ohio held that a plaintiff proceeding under the "regarded as" prong of the ADA Amendment Act of 2008 only had to prove the existence of an impairment to be covered under the Act and that the plaintiff no longer was required to prove that the employer regarded the plaintiff as having an impairment that substantially limits a major life activity.

{¶10} There is no dispute that Morton was concerned that Carnahan may have suffered from a mental impairment as a result of his accident. Jerald Verplaetse ("Verplaetse") was the regional manager for Morton. Verplaetse Dep., 3. Verplaetse testified that he was told by an employee that several employees had spoken with Carnahan and were concerned because Carnahan's demeanor had changed and he was suffering a "little loss of memory when it came to adding numbers." *Id*. at 10-12. Verplaetse also testified that the employees were concerned because Carnahan's balance seemed off. *Id*. at 12. However Verplaetse testified that he did not speak to Carnahan himself and did not speak to the employees who were concerned, but was just told about it from a third party.

*Id.* at 11. Based upon that, Verplaetse decided that Carnahan could not return to work until after he had a fitness for duty exam.[1] *Id.* at 15-16, Plaintiff's Ex. 9. Verplaetse also testified that it was determined that since Morton had had to "move forward" and had given Carnahan's position to another, upon his return from the Family Medical Leave and personal leave, Carnahan would be demoted to crew lead man rather than crew foreman. Plaintiff's Ex. 9.

{¶11} Elizabeth Roberts ("Roberts") testified that she was the benefits manager for Morton. Roberts Dep., 5. Roberts testified that Morton's policy is that they do not allow people to come back to work until they are released to work without restrictions. *Id.* at 20. However, Roberts testified that if an employee is injured at work, Morton will make accommodations for work restrictions. *Id.* at 21. Light duty accommodations are only for those who are subject to worker's compensation claims. *Id.* at 22. Roberts testified that she set up the fit for duty examination because Morton was concerned that Carnahan suffered from memory impairment. *Id.* at 26, Plaintiff's Ex. 8. Roberts also identified Plaintiff's Exhibit 10 as a series of emails that occurred leading to the termination of Carnahan. *Id.* at 30. The initial email was from Andrew Johnson ("Johnson") of Occu-Med, which handled Morton's risk management services for worker's compensation. *Id.* at 31-32. On February 22, 2012, at 8:08 p.m., Johnson indicated that based

---

[1] Although requiring a fitness for duty exam alone is not evidence of a perceived impairment, it can be considered as part of the totality of the circumstances.

upon Policheria's report, the information regarding accommodations needed further clarification before any decision was made as to whether accommodations could be made. Plaintiff's Ex. 10. Less than an hour later, at 8:40 p.m., Jason Shallenberger, the Safety Manager for Morton, responded to Johnson that no clarification was needed as some of the accommodations stated by Policheria could not be done. *Id.* On February 23, 2012, at 12:42 p.m., Kevin Potter ("Potter"), who was the director of crews for Morton at that time, sent an email indicating that the company could not allow Carnahan to return to work with the restrictions indicated by Policheria. Plaintiff's Ex. 10, Potter Dep. 4. The next day, Roberts sent Carnahan the letter of termination. Roberts Dep., 39, Plaintiff's Exhibit 2.

{¶12} Potter also testified that he knew that Carnahan had been injured and that the injuries were severe. Potter Dep., 7-9. When Carnahan's doctor released him for limited work hours, Morton did not bring Carnahan back because the company's policy is that there are no part-time positions for full-time crew members unless it was a work-related injury. *Id.* at 11. Morton's policy is that if an employee suffers a personal injury, they cannot return to work until they are released without restrictions. *Id.* at 13. Potter testified that the fitness evaluation was required because Morton was concerned about Carnahan's ability "to do the physical part of the job and, plus, the safety concerns we had on the current

employees working for us, that we didn't want to jeopardize their safety, so we questioned his ability." *Id*. at 14. This belief was based upon his conversations with Verplaetse about the concerns of unidentified employees. *Id*. at 15. Once Potter saw the report from Policheria, he concluded that Carnahan could not safely return to work, which led directly to Carnahan's termination. *Id.* at 16-17. Although Potter knew that another doctor had previously released Carnahan to return to work without restrictions, Potter determined that based upon Policheria's report, the restrictions required on Carnahan's employment "would have hindered his safety, plus the crew employees safety." *Id*. at 17. Potter claims that is why Carnahan was not allowed to return to work. *Id*. Potter testified that during the time he was the director of crews, no accommodations were granted to an employee who had a physical limitation due to a personal injury rather than a worker's compensation claim. *Id*. at 35. Anyone injured on the job can be assigned to the construction center rather than being sent to job sites. *Id.* at 38.

{¶13} Carnahan's deposition was also filed with the trial court. Carnahan testified that he was then employed by Campbell's as a forklift operator. Carnahan Dep. 8-9. As part of his job, he has to physically lift cases of soup and put them on a pallet. *Id*. at 9. Additionally, he is required to work at heights 20-30 feet in the air, though not on a ladder. *Id*. at 10. Carnahan testified that he has no physical restrictions on his job and passed the physical for employment. *Id*. at

11. Carnahan testified that the job of crew foreman at Morton required frequent lifting of weights from 60 to 100 pounds. *Id*. at 25, Defendant's Ex. A. The job also required occasional twisting and crawling, and frequent climbing on ladders. *Id.* Additionally, the job required constant standing and walking, along with occasional driving. Carnahan Dep. 26, Defendant's Ex. A. Carnahan testified that he requested to return to work, so his doctor discussed it with the physical therapist and performed a physical before clearing him to return to work. Carnahan Dep. 37. The main things checked by his doctor were his balance and strength. *Id*. The doctor told Carnahan that the two weeks of 20 hours a week were merely a transition period to allow his body to transition back into the physical requirements after being off so long. *Id*. at 38. When Carnahan received the letter from Verplaetse that his job had been given to another and that he would return at a demoted position, he "just accepted it and moved on to where I had to do what I had to do to get back to work." *Id.* at 43.

{¶14} Carnahan was set to see Policheria on January 24, 2012. *Id*. Policheria did not conduct any physical examination, but merely did an EEG, a CT scan and neurological testing where he asked Carnahan questions. *Id*. at 44-45. Carnahan testified that he passed the neurological testing with a score of 30-30, which was also confirmed by Policheria's report. *Id*. at 45, Defendant's Ex. F. Although Carnahan disagreed with Policheria's conclusions, he did not argue with

the doctor because he did not feel it would accomplish anything and he believed he was going to lose his job because of it. Carnahan Dep. 47-48. He was subsequently contacted by Morton and told that his employment was terminated due to the medical restrictions on his employment. *Id*. at 49.

{¶15} The first element Carnahan must show to establish a prima facie case for employment discrimination is that Morton regarded him as having a physical or mental impairment as set forth in R.C. 4112.01(A)(16)(a). In this case, Morton relied upon the report of Policheria. Based upon the type of injury suffered by Carnahan, Policheria was concerned about possible neurological impairments and listed several limits on Carnahan's abilities that could occur as a result of the neurological impairment. These limits were based upon possible issues that Carnahan might have as there were no indications of issues at that time and he actually passed all of the tests he was given. Neurological impairment is one of the conditions set forth in R.C. 4112.01(A)(16)(a)(i). Viewing the evidence in a light most favorable to Carnahan, a reasonable juror could determine that Morton, in relying on Policheria's report, perceived Carnahan as having an impairment. Thus, the first element is met.

{¶16} Next, Carnahan must establish that an adverse action was taken by Morton. It is an unlawful discriminatory practice for an employer to discharge an employee without just cause because of a disability. R.C. 4112.02.

-13-

> **Generally, to demonstrate that an adverse employment action has occurred, a plaintiff must show that the employer's conduct caused a "materially adverse change in the terms and conditions of employment." The federal Sixth Circuit Court of Appeals has determined that a "materially adverse change" means something more than mere inconveniences: "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."**

*Brown v. Dover Corp*, 1st Dist. Hamilton No. C-060123, 2007-Ohio-2128, ¶27 (quoting *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (C.A. 6, 1999)). A termination of employment would qualify as an adverse employment action.

{¶17} There is no dispute that as a result of the report provided by Policheria, Morton terminated Carnahan's employment. Potter testified that he decided to terminate Carnahan's employment upon reading the report. This is an adverse action. Thus, the second element of the prima facie case has been met.

{¶18} Finally, Carnahan must present evidence that he can still do the job. He submitted a note from his doctor permitting him to return to work without restriction.[2] Additionally, Carnahan testified that at his current employment, he is still doing manual labor that requires him to be on his feet and can require working

---

[2] The concurring opinion notes that Carnahan indicated in his deposition that his doctor had changed his mind after learning of Policheria's opinion. This is accurate, but is irrelevant to Morton's motive for firing Carnahan as it was not known at that time. The issue before the trial court was whether there was no material issue of fact as to why Morton fired Carnahan based upon the information available at that time, not in hindsight. Likewise, the number of material issues of fact is irrelevant as summary judgment is improper if there is merely one issue of material fact that must be determined.

at heights above floor level. Viewing this evidence in a light most favorable to Carnahan, a reasonable juror could conclude that he is capable of performing the job. Thus, the third element of the prima facie case for employment discrimination has been met.

{¶19} In reviewing a trial court's granting of summary judgment, this court must view all evidence in a light most favorable to the non-moving party. A review of the record in this case indicates that there are genuine issues of material fact as to whether Morton perceived Carnahan as being physically or mentally impaired and terminated his employment as a result. Morton claims that Carnahan's employment was terminated for safety reasons. Carnahan claims that it was the result of discrimination for a perceived impairment. When the record is viewed in a light most favorable to Carnahan, a reasonable jury could determine that Morton discriminated against Carnahan by terminating his employment for a perceived impairment. As a result, the granting of summary judgment was in error as to the claim that Morton regarded him as having a physical or mental impairment. The assignment of error is sustained.[3]

{¶20} Having found error prejudicial to Appellant, the judgment of the Court of Common Pleas of Paulding County is reversed and the cause is remanded for further proceedings.

---

[3] Although we agree with the concurring opinion that Morton may establish a legitimate, nondiscriminatory basis for the termination, that issue is not before us. Thus, it is not ripe for review at this time and we may not address it.

Case No. 11-14-04

*Judgment Reversed and*
*Cause Remanded*

**SHAW, J., Concurring in Judgment only.**


**PRESTON, J., Concurring in Judgment only.**

{¶21} While I concur with the plurality's decision to reverse in this case, I disagree with the plurality's analysis.

{¶22} As the plurality correctly points out, the trial court did not provide any rationale for why it granted Morton's motion for summary judgment. In a disability-discrimination case under R.C. 4112.02(A), the burden is on the employee to establish a prima-facie case of disability discrimination in the absence of direct evidence of discrimination. *See Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571 (1998). Once an employee successfully establishes a prima-facie case of disability discrimination, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See also Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003) (applying the *McDonnell Douglas* burden-shifting scheme to disability-discrimination cases) and *Hood v. Diamond Products, Inc.*, 74 Ohio St.3d 298, 302 (1996) (applying the burden-shifting analysis to disability-discrimination cases under Ohio law). "[I]f the employer establishes a nondiscriminatory reason for the action taken, then the

-16-

employee * * * must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." *Hood* at 302. Therefore, even though I agree with the plurality's decision to reverse this case because there are genuine issues of material fact whether Morton regarded Carnahan as having a physical or mental impairment, the decision to reverse this case does not preclude Morton from establishing a legitimate, nondiscriminatory reason for Morton's termination of Carnahan. In their briefs, the parties focus on whether there are genuine issues of material fact as to the elements of a prima-facie case of disability discrimination under R.C. 4112.01(A)(13).

{¶23} To establish a prima-facie case of disability discrimination, Carnahan must first show that he has a disability under the statute. "Disability" is defined by the statute as

> *a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working*; a record of a physical or mental impairment; or *being regarded as having a physical or mental impairment*.

(Emphasis added.) R.C. 4112.01(A)(13). Therefore, under the statute, a claimant can establish that he has a disability in three potential ways.

{¶24} The plurality asserts that "Carnahan does *not* argue that he was in fact suffering from a disability." (Emphasis added.) (Plurality Opinion at ¶ 8). Indeed, in his brief, Carnahan proposes two separate arguments alleging disability discrimination—that is, Carnahan argues that he is either disabled under the first prong of R.C. 4112.01(A)(13) or regarded by Morton as having a physical or mental impairment under the third prong of R.C. 4112.01(A)(13). Because Carnahan argues separate theories of disability discrimination, and the trial court did not provide any rationale for why it granted Morton's motion for summary judgment, each of Carnahan's arguments must be addressed separately.

{¶25} To prove that he is disabled under the "substantially limits" prong, Carnahan must demonstrate genuine issues of material fact that:

> (1) he [is] disabled, (2) [that] an adverse employment action was taken by an employer, at least in part, because the individual [is] disabled, and (3) [that Carnahan], though disabled, can safely and substantially perform the essential functions of the job in question[—in this case, construction foreman].

*Pavlick v. Cleveland Hts.-Univ. Hts. Bd. of Edn.*, 8th Dist. Cuyahoga No. 101570, 2015-Ohio-179, ¶ 9, citing *DeBolt v. Eastman Kodak Co.*, 146 Ohio App.3d 474, ¶ 39 (10th Dist.2001), citing *McGlone*, 82 Ohio St.3d at 571.

{¶26} First, there must be a genuine issue of material fact that Carnahan is disabled—that is, there must be a genuine issue of material fact that Carnahan has a physical or mental impairment that *substantially limits* one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. R.C. 4112.01(A)(13).

{¶27} As noted by the plurality, Ohio courts "may look to federal regulations and case law in interpreting the Americans with Disabilities Act ("ADA")." *Hart v. Columbus Dispatch/Dispatch Printing Co.*, 10th Dist. Franklin No. 02AP-506, 2002-Ohio-6963, ¶ 24, citing *McGlone* at 573. However, the Supreme Court of Ohio refined this statement, and "federal materials may only be utilized 'when the terms of the federal statute are consistent with Ohio law or when R.C. Chapter 4112 leaves a term undefined.'" *Dalton v. Ohio Dept. Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-827, 2014-Ohio-2658, ¶ 28, quoting *Scalia v. Aldi, Inc.*, 9th Dist. Summit No. 25436, 2011-Ohio-6596, ¶ 23, citing *Genaro v. Cent. Transport*, 84 Ohio St.3d 293, 298 (1999).

{¶28} "Substantially limits" is not defined by R.C. Chapter 4112, but it is defined by the Code of Federal Regulations as:

(i)  Unable to perform a major life activity that the average person in the general population can perform; or

(ii)   Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Pavlick*, 2015-Ohio-179, at ¶ 13, quoting 29 C.F.R. 1630.2(j)(1).

**{¶29}** After incorrectly stating that Carnahan does not argue that he is disabled, the plurality concludes that "[t]he undisputed evidence indicates that there was no actual disability." (plurality Opinion at ¶ 8). I agree that there is no genuine issue of material fact that Carnahan is not disabled under the "substantially limits" prong of the statute, but for different reasons. Carnahan argues that he suffered a "traumatic brain injury, which affected his ability to perform manual tasks, to speak, to hear, and to think[4] for many months." (Footnote added.) (Appellant's Brief at 10-11). To demonstrate the existence of a genuine issue of material fact whether his traumatic brain injury is a disability under the "substantially limits" prong of the statute, Carnahan must set forth Civ.R. 56-quality evidence that his traumatic brain injury substantially limits the major life activities of performing manual tasks, speaking, hearing, and thinking as he asserts. Carnahan did not present evidence that his traumatic brain injury

---

[4] "Thinking" is not a "major life activity" listed under the statute. *See* R.C. 4112.01(A)(13). However, for purposes of my analysis, I assume for the sake of argument that thinking is a major life activity.

-20-

Case No. 11-14-04

*substantially limits* his ability to perform manual tasks, speak, hear, or think. Rather, the record reflects that his traumatic brain injury *does not* substantially limit his ability to perform manual tasks, speak, hear, or think. In particular, the medical report of Dr. Policheria reflects the opposite:

The patient's speech is appropriate, except for hoarseness. The patient can initiate and hold a conversation. * * * No history of hallucinations, delusions. The patient's attention and concentration are appropriate with good motivation. The patient's abstraction is within normal limits. * * * The patient's attention, calculation, and drawing are appropriate. Mini-Mental Status Examination was also performed. The patient has a score of 30/30. * * * Hearing appears appropriate. * * * Motor Examination: Normal tone and strength. No abnormal movements noted. * * * IMPRESSION: * * * Currently, the patient is neurologically stable. * * * The patient has no memory problems. * * * The patient indicated that he is participating in day-to-day activities without any significant difficulties. OPINION: * * * Currently, the patient's stamina, flexibility, strength, coordination, equilibrium, dexterity, vision, hearing, mobility, and effort are fairly within normal range. * * * Based on my evaluation on January 24, 2012, Mr. Samuel

-21-

Carnahan's cognitive ability, organization, and recall skills are within normal limits. I do not see any cognitive deficiency currently.

(Doc. No. 30, Plaintiff's Ex. 7).

**{¶30}** Moreover, that Dr. Policheria placed restrictions on Carnahan does not render him disabled within the meaning of the "substantially limits" prong of the statute. Dr. Policheria's restrictions included:

a. To avoid working above floor level.

b. To avoid any head injuries.

c. To avoid any falls.

d. Avoid working at heights and climbing ladders.

e. To avoid irregular and extended work hours and overtime.

f. To avoid sleep deprivation.

g. To avoid exposure to extreme temperatures for more than 50% of his work time.

h. To avoid climbing ladders to hang trusses and install roofing.

(*Id.*). Certainly, none of these restrictions show that Carnahan's traumatic brain injury *substantially* limits his ability to perform manual tasks, speak, hear, or think. *See* 29 C.F.R. 1630.2(j)(1). *See also Pavlick*, 2015-Ohio-179, at ¶ 15 ("'Merely having an "impairment" does not make one disabled for purposes of

the ADA.'"), quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002). That is, these restrictions do not render Carnahan unable to perform manual tasks, speak, hear, or think. *See* 29 C.F.R. 1630.2(j)(1)(i). Nor do these restrictions significantly restrict the condition, manner, or duration that Carnahan can perform manual tasks, speak, hear, or think as compared to the condition, manner, or duration that an average person in the general population can perform manual tasks, speak, hear, or think. *See* 29 C.F.R. 1630.2(j)(1)(ii).

{¶31} Carnahan testified that he shared Dr. Policheria's report with his physician and chose not to obtain another examination "because [his] primary care physician checked him out and said [he] was okay, [and] all of [his] therapists felt that [he] was okay." (Carnahan Depo., Doc. No. 25 at 50). Carnahan further testified that he has not had any seizures or problems with dizziness or balance. (*Id.* at 60). Likewise, he testified that he is working for Campbell's as a forklift operator without restrictions. (*Id.* at 8, 11). In addition, evidence in the record reflects that Carnahan's physician authorized Carnahan to return to work on January 2, 2012 at 20 hours per week and to return to work on January 15, 2012 at 40 hours per week without restrictions. (Doc. No. 30, Plaintiff's Ex. 2).

{¶32} Furthermore, Carnahan concedes that he was "affected" by his traumatic brain injury for only "many months." (*See* Appellant's Brief at 10-11). In analyzing the language of the ADA, the United States Supreme Court

concluded, "Because the phrase 'substantially limits' appears in the Act in the present indicative verb form, we think the language is properly read as requiring that a person be *presently*—not potentially or hypothetically—substantially limited in order to demonstrate a disability."   (Emphasis added.)   *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999), superseded by statute on other grounds, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.   *See also Maloney v. Barberton Citizens Hosp.*, 109 Ohio App.3d 372, 376 (9th Dist.1996). Carnahan implies that he did not have a physical or mental impairment that presently substantially limited a major life activity.

{¶33} Therefore, Carnahan did not support his opposition to Mortion's motion for summary judgment with *any* evidence that his traumatic brain injury substantially limits a major life activity—that is, he failed to demonstrate a genuine issue of material fact that he is "[u]nable to perform a major life activity that the average person in the general population can perform" or that he is "[s]ignificantly restricted as to the condition, manner, or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. 1630.2(j)(1).  Accordingly, there is no genuine issue of material fact that Carnahan is not disabled under the "substantially limits" prong of the statute.  *See Caldwell v. Ohio State Univ.*, 10th

Dist. Franklin No. 01AP-997, 2002-Ohio-2393, ¶ 76 ("Although Dr. Sickles' progress report indicates an assessment of hypertension and 'problem related to symptoms of lost control and temper,' the record does not demonstrate a diagnosis or record of a physical or mental impairment that substantially limited a major life activity."). Thus, because Carnahan is not disabled under the "substantially limits" prong of the statute, there can be no genuine issue of material fact that Morton took an adverse employment action against him *because of his disability*. Likewise, there can be no genuine issue of material fact that Carnahan could safely and substantially perform the essential functions of a construction foreman *despite his disability*.

{¶34} In the alternative, Carnahan argues that Morton regarded him as having a "disability." To establish a prima-facie case of disability discrimination under the "regarded as" prong of R.C. 4112.01(A)(13), Carnahan must demonstrate genuine issues of material fact that Morton regarded him as having a mental or physical impairment, that Morton took an adverse employment action against Carnahan, at least in part, because of his "perceived" mental or physical impairment, and that Carnahan can safely and substantially perform the essential functions of the job in question—a construction foreman. *See Ames v. Ohio Dept. of Rehab & Corr.*, 10th Dist. Franklin No. 14AP-119, 2014-Ohio-4774, ¶ 26, citing *Peters v. Ohio Dept. of Natural Resources*, 10th Dist. Franklin No.

03AP-350, 2003-Ohio-5895, ¶ 22-23, *Hood*, 74 Ohio St.3d 298, at syllabus, and *McGlone*, 82 Ohio St.3d at 571.

{¶35} I agree with the plurality's conclusion that there are genuine issues of material fact whether Morton regarded Carnahan as having a disability. In particular, I conclude that there are genuine issues of material fact whether Morton regarded Carnahan as having a mental or physical impairment, took an adverse employment action against Carnahan based on that perceived mental or physical impairment, and that Carnahan could safely and substantially perform the essential functions of a construction foreman.[5]

{¶36} As the plurality aptly states, the Supreme Court of Ohio has not addressed the "regarded as" prong of the definition of disability under R.C. 4112.01(A)(13), but the "regarded as" prong of the ADA has been addressed by federal case law.[6] "The current version of the ADA specifically states that an

---

[5] The plurality concludes only "that there are genuine issues of material fact as to whether Morton perceived Carnahan as being physically or mentally impaired and terminated his employment as a result." (Plurality Opinion at ¶ 19).

[6] A close reading of the Supreme Court of Ohio's decision in *McGlone* reveals that the Court analyzed "the pertinent Administrative Code section in effect at the time [of the adverse employment action taken against McGlone], Ohio Adm.Code 4112-5-02(H), [which] included in its definition of a 'handicapped person' 'any person who is regarded as handicapped by a respondent.'" 82 Ohio St.3d 569, 572 (1998). The Supreme Court of Ohio specifically stated, "The question before this court then is whether a person can be foreclosed from a particular job based upon a physical impairment without at the same time being handicapped, or perceived as handicapped, under *former* R.C. 4112.01(A)(13), and therefore due the protections of the Ohio Civil Rights Act." (Emphasis added.) *Id.* Although the Supreme Court of Ohio acknowledged that R.C. 4112.01(A)(13) had been recently amended to include in the definition of disability the regarded-as prong—"being regarded as having a physical or mental impairment"—the language of the current statute and the language of the Administrative Code at that time are not equivalent. Specifically, the language of the statute provides coverage for being regarded as having a physical or mental impairment, while the language of Ohio Adm.Code 4112-5-02(H) at that time provided coverage for being "regarded as handicapped." R.C. 4112.01 provides unique definitions of "disability" and

individual meets the requirement of "'being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity.'" (Emphasis added.) *Dalton*, 2014-Ohio-2658, at ¶ 30, quoting 42 U.S.C. 12102(3)(A). *See also Wells v. Cincinnati Children's Hosp. Med. Ctr.*, 860 F.Supp.2d 469, 478 (S.D.Ohio 2012), citing 29 C.F.R. 1630.2(g)(3) ("explaining that '[i]n contrast to the pre-amendment statute, under the [ADA Amendments Act of 2008], a plaintiff proceeding under the "regarded as" prong only has to prove the existence of an impairment to be covered under the Act; she no longer is required to prove that the employer regarded her impairment as substantially limiting a major life activity'").

{¶37} Carnahan, however, must demonstrate a genuine issue of material fact that Morton regarded him as having a physical or mental impairment as defined by Ohio law. *Scalia*, 2011-Ohio-6596, at ¶ 25, citing R.C. 4112.01(A)(13). Similar to the current version of the ADA, R.C. 4112.01(A)(13) does not require an employee to prove that his/her employer regarded him/her as

---

"physical or mental impairment," indicating that they are two separate legal concepts. In particular, to be disabled under the statute, as I previously discussed, an employee must have a mental or physical impairment that substantially limits a major life activity; whereas, to satisfy the "regarded as" prong, an employee need only be regarded as having a physical or mental impairment. Moreover, prior to its amendment in 2008, the ADA defined the "regarded as" prong as requiring an employer to regard an employee as having a disability that substantially limits a major life activity. *Dalton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-827, 2014-Ohio-2658, ¶ 29.

having a physical or mental impairment that substantially limits a major life activity. Rather, R.C. 4112.01(A)(13) requires an employee to prove that his/her employer regarded him/her as having only a physical or mental impairment. As the Plurality points out, a "physical or mental impairment" under the statute is:

> (iii) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine;
>
> (iv) Any mental or psychological disorder, including, but not limited to, mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities;
>
> (v) Diseases and conditions, including, but not limited to, orthopedic, visual, speech, and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, human immunodeficiency virus infection, mental retardation, emotional illness, drug addiction, and alcoholism.

R.C. 4112.01(A)(16)(a).

**{¶38}** The plurality concludes that "[t]here is no dispute that Morton was concerned that Carnahan may have suffered from a mental impairment as a result of his accident." (Plurality Opinion at ¶ 10). I concur with the plurality's ultimate conclusion that there is a genuine issue of material fact whether Morton regarded Carnahan as having a physical or mental impairment. But, not for the reasons Carnahan proposes. In support of his argument, Carnahan points to the fitness-for-duty examination to which Morton sent Carnahan and to an email in which Potter stated, "I can't believe he made it back" as evidence that Morton regarded him as having a "disability." (Appellant's Brief at 11).

**{¶39}** First, Carnahan's argument that Morton sending Carnahan for a fitness-for-duty exam is evidence that Morton regarded Carnahan as having a disability is meritless. "Ohio and federal courts have concluded that merely sending an employee to an [Independent Medical Examination] or other type of fitness for duty examination, does not amount to evidence that the employer perceived the employee as [having a physical or mental impairment]." *Dalton* at ¶ 31, citing *Peters v. Ohio Dept. of Natural Resources*, 10th Dist. Franklin No. 03AP-350, 2003-Ohio-5895, ¶ 24, *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 808 (6th Cir.1999), *James v. Goodyear Tire & Rubber Co.*, 354 Fed.Appx. 246, 249 (6th Cir.2009), *Mickens v. Polk Cty. School Bd.*, 430 F.Supp.2d 1265, 1274 (M.D.Fla.2006), and *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th

Cir.1996). *See also Ames v. Ohio Dept. of Rehab & Corr.*, 10th Dist. Franklin No. 14AP-119, 2014-Ohio-4774, ¶ 29 (sending employee to three medical examinations does not demonstrate that the employer regarded the employee as having a physical or mental impairment). Therefore, requiring an employee to attend a fitness-for-duty examination *alone* is not evidence that the employer regarded the employee as having a physical or mental impairment.

{¶40} Second, Carnahan's proposition, without citation to any authority or supporting argument, that Potter's email statement is evidence that Morton regarded him as having a mental or physical impairment is baffling. In context, Potter wrote "I am good with that, I can't believe he made it back" in response to an email informing him that Carnahan was permitted to return to work without restrictions. (Plaintiff's Ex. 6). While Potter's statement reflects that he may have regarded Carnahan as having a physical or mental impairment at one time, Potter's statement does not impart that he regarded Carnahan as presently *having* a mental or physical impairment. Thus, it is unclear how that evidence creates a genuine issue of material fact that Morton regarded Carnahan as having a mental or physical impairment.

{¶41} Nonetheless, there is a genuine issue of material fact whether Morton regarded Carnahan as having a mental or physical impairment because there is a genuine issue of material fact whether Morton terminated Carnahan *because of* a

perceived mental or physical impairment. "Generally, an adverse employment action is defined as a material adverse change in the terms and conditions of employment." *Coryell v. Bank One Trust Co., N.A.*, 10th Dist. Franklin No. 07AP-766, 2008-Ohio-2698, ¶ 32, quoting *Tessmer v. Nationwide Life Ins. Co.*, 10th Dist. Franklin No. 98AP-1278, 1999 WL 771013, *4 (Sept. 30, 1999), citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996). "A termination of employment is one accepted definition of an 'adverse employment action.'" *Witte v. Rippe & Kingston Sys., Inc.*, 358 F.Supp.2d 658, 670 (S.D.Ohio 2005), citing *Tessmer* at *4. In this case, as the majority points out, Morton terminated Carnahan's employment after receiving Dr. Policheria's report. Accordingly, there is a genuine issue of material fact whether Morton took an adverse employment action against Carnahan because of a perceived mental or physical impairment.

{¶42} Most pertinently, there is a genuine issue of material fact whether Carnahan can safely and substantially perform the essential functions of a construction foreman.[7] The plurality concludes that because Carnahan's physician

---

[7] Carnahan argues that he could perform the essential functions of his job without restrictions and, in the alternative, argues that he could perform the essential functions of his job with a reasonable accommodation. However, Carnahan's argument that he could perform the essential functions of his job with a reasonable accommodation is meritless since there is no evidence in the record that Carnahan requested Morton to accommodate him. *See DeBolt v. Eastman Kodak Co.*, 146 Ohio App.3d 474, 2001-Ohio-3996, ¶78 (10th Dist.) ("A [disabled] employee who claims that he is otherwise qualified with a reasonable accommodation '"bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable."'"), quoting *Darovich v. Gen. Motors Corp.*, 8th Dist. Cuyahoga No. 75859, 2000 WL 217766, *8 (Feb. 24, 2000), quoting *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir.1998).

authorized him to return to work without restrictions, and because he is performing manual labor at his current job, "a reasonable juror could conclude that he is capable of performing the job." (Plurality Opinion at ¶ 18). Being "*capable of performing the job*" is not the standard. *See Ames*, 2014-Ohio-4774, at ¶ 26. Instead, Carnahan must demonstrate that a genuine issue of material fact exists regarding whether he can *safely and substantially perform the essential functions* of a construction foreman.

{¶43} The record contains conflicting evidence whether Carnahan can safely and substantially perform the essential functions of a construction foreman. Specifically, the "return to work" slip from Carnahan's physician, Dr. Barb, indicates that Carnahan could return to work *without* restrictions on January 15, 2012, while the medical report of Dr. Policheria from the fitness-for-duty examination indicates that Carnahan could return to work *with* restrictions. (Doc. No. 30, Plaintiff's Exs. 2, 7). Some of the essential functions of Carnahan's position as a construction foreman included working outside "90% of the day," working in temperatures of "-10 degrees to 100 degrees plus," and "frequent"[8] climbing. (Carnahan Depo., Doc. No. 25, Defendant's Ex. A). Also, the job description notes that the position includes "hazards," such as falls, heat, cold, ladders, and climbing. (*Id.*). Therefore, because Dr. Policheria recommended that

---

[8] "Frequent" is defined by Carnahan's job description as "34-66% of shift." (Carnahan Depo., Doc. No. 25, Defendant's Ex. A).

Carnahan not work at heights or climb, avoid ladders and falls, and exposure to extreme temperatures more than fifty percent of the time and because Dr. Barb placed *no* restrictions on Carnahan, there is a genuine issue of material fact whether Carnahan can safely and substantially perform the essential functions of a construction foreman.

{¶44} Also, Carnahan testified that he is working for Campbell's, without restrictions, as a forklift operator. (Carnahan Depo., Doc. No. 25 at 8). He testified that the essential functions of that job include operating a forklift to "pick" orders, to lift cases of soup onto the forklift, and to go up 20 to 30 feet in the air in a "cage" attached to the forklift to release products when they become jammed in the racks. (*Id.* at 9-10). However, Carnahan testified that he had not yet performed the "cage" function because he had not received the proper training to perform that function. (*Id.* at 11). Based on those facts in the record, I conclude that there is a genuine issue of material fact whether Carnahan can safely and substantially perform the essential functions of a construction foreman.

{¶45} Therefore, I would reverse and remand for the trial court to determine whether Morton regarded Carnahan has having a physical or mental impairment in accordance with Ohio law. Then, if Carnahan is able to demonstrate a prima-facie case under the "regarded as" prong of R.C. 4112.01(A)(13), the trial court must apply the *McDonnell Douglass* burden-

shifting framework to determine if Morton had a legitimate, nondiscriminatory reason for terminating Carnahan's employment.

**/jlr**