[Cite as *Hinton v. Ohio Dept. of Youth Servs.*, 2022-Ohio-4783.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Roger Hinton et al., | : | |
| Plaintiffs-Appellants, | : | No. 22AP-272 |
| | | (Ct. of Cl. No. 2021-00063JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Youth Services et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 29, 2022

**On brief:** *Olsheski Law Co.*, *LPA*, and *Jessica L. Olsheski*, for appellants. **Argued:** *Jessica L. Olsheski*.

**On brief:** *Dave Yost*, Attorney General, *Heather Lammardo*, *Michelle L. Brizes*, and *Lindsey M. Grant*, for appellees. **Argued:** *Heather Lammardo*.

APPEAL from the Court of Claims of Ohio

McGRATH, J.

{¶ 1} Plaintiffs-appellants Roger Hinton and Denise Guess appeal from a decision of the Court of Claims of Ohio granting the motion for summary judgment of defendants-appellees Ohio Department of Youth Services ("DYS") and Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm.

{¶ 2} On February 4, 2021, appellants filed a complaint against appellees alleging claims of racial discrimination, hostile work environment, and retaliation pursuant to R.C. Chapter 4112. The claims arose from appellants' employment with DYS. Both Hinton and Guess began working for DYS in 1991 and remained with DYS until their involuntary disability separations. The complaint details various incidents throughout their

employment that appellants allege constitute discrimination based on their race. Appellants are both African-American.

{¶ 3} Appellants held various positions with DYS throughout their tenures, but both worked at the Information Technology Help Desk ("help desk") at the time of their disability separation. The help desk was a project shared by DYS and ODRC but was physically located in an area occupied by ODRC. Of the nine total staff members who worked at the help desk, six were ODRC employees, one was an ODRC contractor, and the remaining two, Guess and Hinton, were DYS employees. The six ODRC help desk employees were all white males. Their names are Chris McCoy, Tim Fornal, Jimmy Long, Noel Cohen, Braeden Ramge, and Steve Rayburn. The ODRC contractor, Tyler Thompson, is a mixed-race female. While both agencies utilized and operated the help desk, DYS and ODRC both maintained separate management policies and procedures, separate supervisory staff, and separate human resources departments. Thus, Guess and Hinton were subject to DYS policies and procedures, while ODRC employees were subject to ODRC policies and procedures.

{¶ 4} In 2016, prior to Guess's assignment to the help desk, DYS investigated and disciplined Guess due to her sick leave balance. Guess was aware that a male coworker had a similar sick leave balance but did not face investigation or discipline. Accordingly, on February 22, 2017, Guess filed a complaint with the Ohio Civil Rights Commission ("OCRC"). DYS ultimately removed the written discipline from Guess's file as the result of a mutual agreement. Five days later, on February 27, 2017, DYS administered a written coaching to Guess for "attendance and dependability" issues. (Compl. at ¶ 16.)

{¶ 5} DYS assigned Guess to the help desk in July 2018. On January 17, 2019, Guess received a written coaching from Linda Diroll, the manager of the help desk and an ODRC employee. The written coaching related to Guess working 0.10 hours of overtime without prior authorization. According to Guess, a written coaching is not a formal disciplinary measure but "puts you on the discipline grid" such that subsequent issues would result in formal discipline. (Guess Depo. at 80.) Guess was aware of DYS's unauthorized overtime policy but was not aware that she had worked over 40 hours in the week that she received the written coaching. Further, Guess was aware that other white male help desk staff had worked overtime before and were not disciplined for it. These men worked for ODRC, not DYS, and Guess acknowledges she is not familiar with ODRC's

policies. Guess also alleged she knew of other DYS employees staffed at other locations who had worked overtime without discipline, though she admits she does not know whether these other employees had received prior authorization to work overtime. As a result of the written coaching from the ODRC supervisor, Guess filed a grievance but it was not heard.

{¶ 6} In February 2019, Guess utilized leave time on two occasions to attend court hearings related to a citation for operating a vehicle under the influence. Guess did not provide the reason for use of leave time to DYS. Subsequently, Guess approached Diroll, the help desk manager, about needing future time off every Tuesday for a court-related matter. Diroll refused to approve Guess's leave request without a court order. Guess was unable to obtain a court order but provided alternative documentation to Diroll. After Diroll again refused to approve her leave request, Guess contacted her DYS supervisors to explain why she needed to utilize future leave time. The network supervisor for DYS, Scott Welsh, approved Guess's request for future use of leave subject to certain timeframe stipulations.

{¶ 7} Shortly thereafter, on March 19, 2019, Guess received a formal notice to attend a pre-disciplinary meeting for failing to receive a manger's approval for using leave to defend a court action. Guess contends she was not aware at the time that there was a policy requiring her to disclose why she was using her personal leave time. She agrees, however, that she signed a form indicating she had reviewed DYS's policies. Further, Guess believes Diroll initiated the investigation due to racial bias.

{¶ 8} DYS assigned Hinton to the help desk in October 2018. In an October 18, 2018 e-mail, the director of DYS informed DYS help desk employees that they were required to punch in and/or out when coming to and going from the building. When Hinton returned from a lunch break on December 6, 2018, he attempted to clock back in using his work badge but the timekeeping system would not accept his badge. Hinton then manually entered his time in the timekeeping system using the time-editor feature. Subsequently, in February 2019, Hinton received a formal notice of a pre-disciplinary hearing related to his unauthorized manual entry of time. That hearing was later cancelled. Hinton maintains that his white male help desk coworkers have manually entered their time without an ensuing investigation. Hinton agrees he is not familiar with ODRC policies with respect to timekeeping, breaks or leave time.

{¶ 9} In 2019, Jeff Cavendish, another ODRC help desk supervisor, received complaints from ODRC help desk employees about Guess's and Hinton's workplace conduct. After consulting with Diroll, Cavendish held a meeting with ODRC help desk employees and informed them that if they had workplace complaints they believed warranted further investigation, they would need to complete an incident report. Cavendish asserts he approached all the employees who were at the help desk at the time of the meeting and had them come to the computer lab for the meeting, but Guess and Hinton maintain Cavendish only approached the white male ODRC employees. Guess and Hinton assert they were at their desks at the time but not included in the meeting. Thompson, the ODRC contractor, was not at her desk at the time Cavendish initiated the meeting. Cavendish did not conduct a subsequent meeting with Guess, Hinton, or Thompson. In his time as a supervisor, Cavendish had only held one other meeting, and that prior meeting included all help desk employees.

{¶ 10} Following the meeting, McCoy informed Thompson that Cavendish had instructed the help desk employees to complete an incident report any time there was an issue with Guess or Hinton. Thompson did not perceive that she was excluded from the meeting because of her race; however, she believes the meeting led to a "war" among DYS and ODRC help desk employees where both groups "went back and forth filing reports on each other." (Thompson Depo. at 29.)

{¶ 11} Guess learned of the meeting from Thompson and then informed Hinton. Appellants subsequently learned that other help desk employees had made statements against them, and a DYS labor relations officer instructed appellants to submit their own written statements. Guess submitted one statement alleging that the meeting created a hostile work environment by instructing "all white males" to report incidents about the only two black help desk employees, and excluded the only other minority employee. (Guess Depo. at 154.) Hinton submitted three statements alleging: (1) offensive discussions, including the topics of "gun control, homophobia, abortion, lynching, and the use of profanity" disrupted the workplace; (2) the February 26, 2019 meeting created a hostile work environment, and (3) Diroll and Cavendish allowed ODRC employees to get away with theft of time. (Hinton Depo. at Ex. G.)

{¶ 12} On March 20, 2019, Guess informed Hinton that she planned to contact the Employee Assistance Program ("EAP") because she was feeling discriminated against, was

afraid she was going to be fired for issues related to her unauthorized overtime and use of leave, and she could not tolerate the workplace environment any longer. Hinton then contacted EAP and stated he was being harassed by his employer, was subject to regular investigations, and was under constant stress from trying to get someone to listen to his concerns about the work environment. Both Guess and Hinton left work after their discussions with EAP and have not returned. On September 1, 2019, DYS involuntarily separated Guess from employment due to disability. DYS involuntarily separated Hinton from employment due to disability on October 13, 2019. Appellants have not requested reinstatement.

{¶ 13} Appellees filed a motion for summary judgment on January 6, 2022. Appellees argued all claims against ODRC fail in their entirety because ODRC was not appellants' employer. Further, appellees argued appellants could not demonstrate a prima facie case of discrimination based on disparate treatment, ODRC employees were not similarly situated to appellants, and appellees set forth legitimate, non-discriminatory reasons for the actions. Appellees further argue appellants did not put forth sufficient evidence to support their hostile work environment claim and that the applicable statute of limitations bars Guess's retaliation claim. Appellants filed a memorandum contra on February 17, 2022, arguing there remained genuine issues of material fact on each of their claims.

{¶ 14} In a March 28, 2022 decision, the Court of Claims determined there remained no genuine issues of material fact and that appellees are entitled to judgment as a matter of law on all claims. That same day, the court issued a judgment entry granting appellees' motion for summary judgment and entering judgment in favor of appellees. Appellants timely appeal.

{¶ 15} Appellants assign the following errors for our review:

> [I.] The trial court's decision is against the manifest weight of the evidence.
>
> [II.] The trial court's decision is not supported in law or fact.
>
> [III.] The trial court failed to take into account evidence of damages to Plaintiffs.
>
> [IV.] Genuine issues of material fact remain as to each and every one of Plaintiffs' claims.

[V.] Trial court failed to address whether a disability separation caused by the employer constitutes an adverse action.

{¶ 16} An appellate court reviews summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 10th Dist. No. 20AP-563, 2021-Ohio-3898, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 17} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 18} Appellants' first, second, and fourth assignments of error are interrelated and we address them jointly. Taken together, these three assignments of error assert the Court of Claims erred in finding there remained no genuine issues of material fact as to appellants' discrimination claims for disparate treatment, hostile work environment, and retaliation.

{¶ 19} Appellants claim DYS and ODRC discriminated against them on the basis of their race in violation of R.C. Chapter 4112, subjecting them to disparate treatment.

{¶ 20} R.C. Chapter 4112 governs anti-discrimination actions brought under Ohio law. R.C. 4112.02(A) provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or

privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.99 authorizes civil actions for any violations of R.C. Chapter 4112. Generally, Ohio courts look to federal anti-discrimination case law when examining employment discrimination cases made under state law. *Nelson v. Univ. of Cincinnati*, 10th Dist. No. 16AP-224, 2017-Ohio-514, ¶ 31, citing *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 15. *But see Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 31 (stating Ohio courts are not bound to federal interpretation of analogous statutes).

{¶ 21} In order to prevail in an employment discrimination case, a plaintiff must prove discriminatory intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist.1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996); *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983), fn. 3. Where, as here, a plaintiff seeks to establish discriminatory intent through indirect methods of proof, the claim is subject to the burden-shifting analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), first adopted by the Supreme Court of Ohio in *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 197 (1981). A plaintiff claiming discrimination in employment through indirect evidence must first demonstrate a prima facie case of discrimination. *Bowditch v. Mettler Toledo Internatl., Inc.*, 10th Dist. No. 12AP-776, 2013-Ohio-4206, ¶ 15. If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate non-discriminatory reason for the challenged action. *Id.* at ¶ 16. If the employer meets its burden of production, a plaintiff must prove by a preponderance of the evidence that the employer's legitimate non-discriminatory reason is merely a pretext for unlawful discrimination. *Id.* at ¶ 17.

{¶ 22} A plaintiff establishes a prima facie case of discrimination by showing that he or she: (1) is a member of a statutorily protected class, (2) was subjected to an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person not belonging to the protected class or that the employer treated a similarly situated, non-protected person more favorably. *Moody v. Ohio Dept. of Mental Health & Addiction Servs.*, 10th Dist. No. 21AP-159, 2021-Ohio-4578, ¶ 17; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 15. Appellants assert they were

subject to adverse employment action both through individual actions and a pattern of discrimination during their tenures. The Court of Claims found that summary judgment in favor of appellees was warranted because appellants could not demonstrate they were treated less favorably than a similarly situated person.

{¶ 23} Where a plaintiff in a discrimination claim contends his or her employer provided more favorable treatment to a non-protected similarly situated person, "the individual with whom the plaintiff seeks to compare [his or] her treatment must be similar in all relevant respects." *Kenner v. Grant/Riverside Med. Care Found.*, 10th Dist. No. 15AP-982, 2017-Ohio-1349, ¶ 33, citing *Ames v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-119, 2014-Ohio-4774, ¶ 42. Courts must consider whether the proffered individual dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without mitigating or differentiating circumstances that would distinguish either their conduct or the employer's treatment of them. *Id.*, citing *Mittler v. OhioHealth Corp.*, 10th Dist. No. 12AP-119, 2013-Ohio-1634, ¶ 36. In order to find the plaintiff and the proffered individual are similarly situated, the proffered individual's conduct must be of " 'comparable seriousness' " to the conduct predicating the plaintiff's adverse treatment. *Id.*, quoting *Ames* at ¶ 43-44.

{¶ 24} Both Guess and Hinton allege they experienced disparate treatment related to their timekeeping and for being excluded from the February 26, 2019 meeting. Hinton admits to manually entering his time in the timekeeping system using a time-editor feature without obtaining prior authorization. He seeks to compare himself to the white male ODRC helpdesk employees who, he alleges, also manually entered their time without facing discipline. However, Hinton provides no evidence that the white male ODRC employees used the time-editor feature to manually enter their time or that they did not have prior authorization to manually enter their time. Additionally, Hinton acknowledges that the proffered individuals are all ODRC employees while Hinton is a DYS employee. Hinton agrees that ODRC has separate disciplinary procedures, and he further agrees he is unfamiliar with ODRC's policies related to timekeeping, breaks, and leave time.

{¶ 25} Guess admits she worked overtime without prior authorization. While Guess seeks to compare herself to several of the white male ODRC help desk employees who she alleges had worked overtime without facing discipline, Guess did not present evidence that these other employees worked overtime without prior authorization. Guess acknowledges

these individuals are ODRC employees, not a DYS employee like herself, and she agrees that she is unfamiliar with ODRC's separate disciplinary procedures.

{¶ 26} Guess also points to the investigation into her sick leave balance and alleged a male DYS coworker had a similar sick leave balance but did not face investigation. However, Guess did not present any evidence related to whether this other employee is a protected or non-protected individual. As to the disciplinary procedures related to Guess's use of leave time to defend a court action, Guess does not allege that a similarly situated non-protected individual engaged in the same conduct and received more favorable treatment.

{¶ 27} Appellants both allege they were excluded from the February 26, 2019 meeting because of their race, and they identify the six white male ODRC help desk employees as the proffered similarly situated individuals. Appellants agree that all six of the white male help desk employees who attended the meeting were ODRC employees, not DYS employees like themselves. ODRC and DYS employees are subject to separate workplace policies and procedures.

{¶ 28} Nonetheless, appellants argue they should be deemed similarly situated to the proffered individuals because all help desk employees reported to the same supervisor at the help desk, regardless of whether they worked for ODRC or DYS. However, even assuming arguendo that appellants demonstrated a prima facie case of discrimination, such a showing does not end the inquiry. Under the *McDonnell Douglas* burden-shifting analysis, the burden then shifts to appellees to demonstrate a legitimate, non-discriminatory reason for the adverse action. *Refaei v. Ohio State Univ. Hosp.*, 10th Dist. No. 10AP-1193, 2011-Ohio-6727, ¶ 13. Appellees' burden is one of production, not persuasion. *Id.* ("defendant need not prove a nondiscriminatory reason for the employment action adverse to plaintiff, but need [to] merely articulate a valid rationale") (Internal citations and quotations omitted.). If the employer meets its burden of production, the burden shifts back to the employee to demonstrate that the reason offered by the employer is mere pretext for discrimination. *Refaei* at ¶ 14, citing *Boyd v. Ohio Dept. of Mental Health*, 10th Dist. No. 10AP-906, 2011-Ohio-3596, ¶ 27. To prove the proffered reason is pretext for discrimination, the employee must show both that the proffered reason was false *and* that the real reason was discrimination. *Id.*, citing *Boyd* at ¶ 28, citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

{¶ 29} As to the individual instances of investigation and discipline, appellees assert they took such action against appellants because both Hinton and Guess violated DYS policies related to their respective conduct. The violation of workplace policies is a legitimate, non-discriminatory reason to investigate and/or discipline an employee. *See, e.g., Tanksley v. Howell*, 10th Dist. No. 19AP-504, 2020-Ohio-4278, ¶ 26. Appellants admit they engaged in the conduct and admit their conduct violated work rules, and they do not offer any evidence demonstrating the proffered reason was false.

{¶ 30} As to the February 26, 2019 meeting, appellees assert the meeting was held to instruct help desk employees how to formally report complaints. Though Cavendish initiated the meeting after receiving various informal complaints about appellants' workplace conduct, appellants provide no evidence that those complaints were based on race. To the extent appellants argue the meeting must have been racially motivated because only white males were in attendance, appellants do not support this conclusory allegation with any Civ.R. 56 evidence. *Love v. Columbus*, 10th Dist. No. 20AP-41, 2021-Ohio-3494, ¶ 27 ("unsubstantiated allegations are insufficient to show pretext"). All the employees at the meeting were ODRC employees, and Hinton and Guess both believed at the time of the meeting that they were not included because they are DYS employees. Though Thompson, an ODRC employee and a minority, also was not at the meeting, she was away from her desk at the time Cavendish convened the meeting. Appellees presented evidence that Cavendish convened the meeting to explain the incident report procedure to employees who may have complaints about their coworkers. This is a legitimate, non-discriminatory reason to hold a meeting, and appellants do not offer any evidence demonstrating this proffered reason was false.

{¶ 31} Having reviewed the entire record, we agree with the Court of Claims that appellants failed to meet their burden to demonstrate there is a genuine issue of material fact related to their discrimination claim for disparate treatment. Accordingly, the court did not err in granting appellees' motion for summary judgment on the disparate treatment claim.

{¶ 32} Appellants next argue the court erred in granting summary judgment to appellees on their claim for hostile work environment.

{¶ 33} To prevail on a claim for hostile work environment created by racial harassment, a plaintiff must demonstrate: (1) the employee is a member of a protected

class, (2) the harassment was unwelcome, (3) the harassment was based on race, (4) the harassment had the effect or purpose of unreasonably interfering with the employee's work performance or of creating an intimidating, hostile, or offensive work environment, and (5) employer liability through respondeat superior. *Chapa v. Genpak, LLC*, 10th Dist. No. 12AP-466, 2014-Ohio-897, ¶ 33, citing *Zacchaeus v. Mt. Carmel Health Sys.*, 10th Dist. No. 01AP-683 (Feb. 5, 2002), citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).

{¶ 34} The third element of a claim for hostile work environment created by racial harassment provides the harassment must be based on race. *Chapa* at ¶ 33. Appellants assert appellees enabled a hostile work environment by allowing inappropriate discussions and language in the workplace, facilitating racially exclusive meetings, and engaging in disparate discipline of minority employees. With respect to appellants' reliance on their exclusion from the February 26, 2019 meeting and appellees' alleged disparate discipline of minority employees, these same incidents formed the basis of appellants' disparate treatment claim. As we explained in our discussion of that claim, appellants could not show there remained a genuine issue of fact that either the attendance of the meeting or the occasions of discipline were based on race. We similarly conclude under appellants' hostile work environment claim that appellants did not provide any evidence demonstrating either the February 2019 meeting or their respective disciplinary matters were based on race.

{¶ 35} Appellants' remaining allegation of harassment is the inappropriate discussions in the workplace. More specifically, Hinton reported to Wayne Patrick Morgan, a human resources representative for DYS, that he had overheard a conversation about lynching and another conversation about a movie that Hinton believed depicted black people in a negative light. Hinton did not provide details of these conversations or the name of the movie. Further, Hinton did not allege these conversations were directed at him and instead alleged they occurred within earshot of him. Guess testified at her deposition that she overheard a few conversations about the Second Amendment in the context of police shootings of black people that had recently been in the news. Guess construed these conversations as race-related because she heard ODRC employees state "we still have a right to our guns." (Guess Depo. at 172.) Though we note that the conversations Guess overheard have a more tenuous connection to race than the conversations Hinton overheard, for purposes of summary judgment we will construe the conversations relied on by both appellants as at least creating an issue of fact as to whether the alleged harassment

was based on race. The question becomes, then, whether the workplace conversations that Hinton and Guess overheard created a working environment that was sufficiently hostile to survive appellees' motion for summary judgment.

{¶ 36} The fourth element of the test for a claim of hostile work environment requires a court to determine whether, in considering all the circumstances, the work environment was sufficiently hostile. *Chapa* at ¶ 34, citing *Zacchaeus*. Factors the court must consider include: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether the conduct is physically threatening or humiliating, or whether it is a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance. *Id.*, citing *Zacchaeus*, citing *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998). The standards for judging hostility are "sufficiently demanding" in order to filter out complaints attacking "the ordinary tribulations of the workplace." (Internal quotations and citation omitted.) *Chapa* at ¶ 35. To constitute a change in the terms and conditions of employment, the conduct must be extreme. *Id.*, citing *Faragher* at 788, and *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. No. 11CA3277, 2012-Ohio-2464, ¶ 19 ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"). (Internal quotations and citations omitted.)

{¶ 37} This court previously considered the question of frequency in *Chapa* and *Zacchaeus*. The plaintiff in *Chapa* worked for the defendant-employer for two separate stints totaling approximately nine years. He claimed he was routinely called offensive names by a particular supervisor; although the plaintiff did not cite specific dates or years, he asserted he was "sometimes subjected to racial remarks or statements from [the supervisor] on a daily basis." *Chapa* at ¶ 40. Based on the plaintiff's allegations, we concluded the offensive conduct was "indeed somewhat frequent." *Id.* at ¶ 38. Notwithstanding that conclusion, however, the court further held that frequency of offensive comments, by itself, was insufficient to sustain a hostile work environment claim. *Id.* at ¶ 41. The plaintiff in *Zacchaeus* worked for the defendant-employer for approximately 50 days. *Zacchaeus* at 1-2. He claimed that, during his employment, his supervisor made comments that were demeaning to his race and national origin. *Id.* at 2. The plaintiff claimed in his deposition that he was subjected to offensive statements "every night," but only specifically testified about three offensive statements made during a one-

week span.  *Id*. at 6.  Despite the plaintiff's general claim of regular harassment, this court concluded that the three specific occasions during a one-week span over the course of his employment "can be characterized as 'infrequent.' "  *Id*. at 8.

{¶ 38} In this case, the evidence established that Guess worked on the help desk approximately seven to eight months, from July 2018 to March 2019, and Hinton worked on the help desk approximately four to five months, from October 2018 to March 2019. Hinton asserted he overheard two offensive conversations during his time working on the help desk.  Similarly, Guess testified she overheard a few conversations that she deemed to have been race-related when she was working on the help desk, but could not provide specific details about when those conversations occurred or the substance of the conversations.  These few conversations during a four-to-eight-month span are more analogous to the "infrequent" offensive conduct that occurred in *Zacchaeus* than the "somewhat frequent" conduct we found in *Chapa*. Therefore, appellants fail to demonstrate the frequency of offensive conduct necessary to establish a hostile work environment claim.

{¶ 39} After considering the frequency of the discriminatory conduct, we now consider its severity.  While the question of whether conduct is severe or pervasive is often a question of fact, this court has specifically held that a trial court appropriately grants summary judgment where the alleged conduct is not sufficiently severe or pervasive as a matter of law.  *Chapa* at ¶ 68 (summary judgment in favor of employer was appropriate where appellant failed to meet the fourth element of a hostile work environment claim because he did not demonstrate the alleged conduct created an objectively hostile work environment).  Considering all the circumstances, we agree with the Court of Claims that appellants have not demonstrated circumstances severe enough to constitute harassment within the meaning of a hostile work environment claim.  The conversations appellants overheard, while offensive utterances and in poor taste, were infrequent and did not occur regularly.   Hinton and Guess alleged they overheard these conversations only a few times and could not provide specific details about when they occurred or the contents of the conversations beyond their general topics. Additionally, the conversations were not directed at appellants, and the "second-hand" nature of the comments is relevant to determination of their severity.  *Chapa* at ¶ 45, citing *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir.1997) (comments need not be directed at the plaintiff to create a hostile

work environment, but this fact contributes to the conclusion that the conduct was not severe enough to substantiate the claim).

{¶ 40} Though appellants alleged the working conditions were so hostile as to force them to separate from their employment, this argument only reflects appellants' subjective perceptions of the conduct. However, in order for the conduct to be actionable under a hostile work environment claim, appellants must also demonstrate the conduct is severe and/or pervasive enough to create an *objectively* hostile or abusive work environment. *Chapa* at ¶ 55, citing *Harris* at 21-22 (the standard for a hostile work environment claim requires the conduct to be both objectively hostile or abusive and subjectively perceived by the plaintiff to interfere with the conditions of their employment). The work environment is objectively hostile or abusive where it is "an environment that a reasonable person would find hostile or abusive." (Internal quotations and citations omitted.) *Id.* "Mere utterance of an * * * epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment" to create a hostile work environment. (Internal quotations and citations omitted.) *Id.*

{¶ 41} Here, appellants put forth evidence that they did not get along with their ODRC counterparts at the help desk. However, mindful of the stringent standard applicable to hostile work environment claims, appellants simply do not allege sufficient harassment based on race such that there is a genuine issue of material fact on this claim. Based on the Civ.R. 56 evidence presented, the conversations Hinton and Guess overheard were infrequent, isolated incidents, and the conversations were not directed at appellants. The comments were not physically threatening or sufficiently humiliating to create a hostile work environment claim. Appellants failed to demonstrate a genuine issue of fact that the alleged conduct was so severe or pervasive as to create an objectively hostile work environment. *Chapa* at ¶ 66 (summary judgment in favor of employer is appropriate even where the employee asserts the environment was hostile because under the factual circumstances alleged, reasonable minds could come to but one conclusion on the issue as the facts are " 'so one-sided that one party must prevail as a matter of law' "), quoting *Ochsmann v. Great Am. Ins. Co.*, 10th Dist. No. 02AP-1265, 2003-Ohio-4679, ¶ 10. Accordingly, we agree with the Court of Claims that appellees are entitled to summary judgment on the hostile work environment claim.

{¶ 42} Appellants additionally argue the Court of Claims erred in granting summary judgment to appellees on Guess's retaliation claim. The court determined the statute of limitations operated to bar the claim. Appellants dispute the court's application of a two-year statute of limitations and argue, instead, that the claim was subject to a six-year statute of limitations.

{¶ 43} Under R.C. 4112.02(I), it is an unlawful business practice to discriminate against a person because that person has opposed any unlawful discriminatory practice defined under R.C. 4112.02. R.C. 4112.99(A) provides that violations of R.C. Chapter 4112 are subject to civil actions for damages. While R.C. 4112.99 does not contain a statute of limitations, the Supreme Court has held that R.C. 4112.99 is a remedial statute, subject to the six-year statute of limitations under R.C. 2305.07(B) for actions on liability created by statute. *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 282 (1994). Thus, appellants assert Guess's retaliation claim was subject to the six-year statute of limitations.

{¶ 44} Notwithstanding the general holding of *Cosgrove*, however, this court has held that claims under R.C. Chapter 4112 against the state are subject to a two-year statute of limitations. *Hostacky v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 21AP-349, 2021-Ohio-4464, ¶ 6. More specifically, the two-year statute of limitations provided in the Court of Claims Act for claims against the state applies to claims under R.C. 4112.99. *Id.*; *McFadden v. Cleveland State Univ.*, 10th Dist. No. 06AP-638, 2007-Ohio-298, ¶ 10 ("[T]he two-year statute of limitations in R.C. 2743.16 applies to claims such as appellant's that seek monetary damages for discrimination against the state."). *See also Cargile v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 11AP-743, 2012-Ohio-2470, ¶ 12 ("[T]he longest limitations period applicable to actions in the Court of Claims is two years."); *Simmons v. Ohio Rehab. Servs. Comm.*, 10th Dist. No. 09AP-1034, 2010-Ohio-1590, ¶ 6 ("[T]he legislature clearly intended for that two-year limitation [contained in R.C. 2743.16] to take precedence over all other statutes of limitation in the Revised Code at large.").

{¶ 45} Here, Guess claims retaliation by state agencies. Therefore, the claim is subject to a two-year statute of limitations. The complaint alleged that Guess filed a discrimination complaint with OCRC on February 22, 2017. The complaint further alleged Guess received a written coaching for attendance and dependability issues five days later on February 27, 2017. Guess bases the retaliation claim on the written coaching, asserting

it was issued in retaliation for filing the discrimination claim with OCRC. The complaint in this case was filed on February 4, 2021, nearly four years after Guess received the written coaching that she alleges was in retaliation for her discrimination claim. Because appellants filed the complaint more than two years after the alleged retaliatory act and do not assert any tolling of the statute of limitations, the Court of Claims did not err by concluding the retaliation claim was time-barred and granting summary judgment in favor of appellees on that claim.

{¶ 46} Thus, having determined the Court of Claims did not err in granting summary judgment in favor of appellees on all of appellants' claims, we overrule appellants' first, second, and fourth assignments of error.

{¶ 47} In their third assignment of error, appellants argue the Court of Claims erred in failing to consider the damages appellants suffered as a result of their claims. Through this argument, appellants assert the court did not adequately weigh their involuntary disability separation as a relevant factor in determining whether a genuine issue of material fact existed as to their discrimination claims. According to appellants, the fact that they were placed on involuntary disability separation necessarily constitutes proof that they suffered disparate treatment and a hostile work environment due to racial harassment. We disagree.

{¶ 48} Appellants bore the burden to overcome the motion for summary judgment by pointing to Civ.R. 56 evidence demonstrating the existence of a genuine issue of material fact remained. As we explained above, appellants were unable to demonstrate that appellees' legitimate, non-discriminatory explanations for the conduct were mere pretext or that the alleged harassment was sufficiently severe. Although appellants maintain that the alleged workplace racial discrimination ultimately caused them to be placed on involuntary disability separation, this position represents appellants' subjective beliefs. However, "[w]hether the harassment is sufficiently severe or pervasive uses an objective standard; that is, a reasonable person in the plaintiff's position, considering all the circumstances must think it [is] severe." *Ballard v. Community Support Network*, 10th Dist. No. 10AP-104, 2010-Ohio-4742, ¶ 10, citing *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80-81 (1998), citing *Harris* at 23. Here, the court appropriately considered the totality of the circumstances in determining appellees were entitled to summary judgment. Accordingly, we overrule appellants' third assignment of error.

{¶ 49} In their fifth and final assignment of error, appellants argue the Court of Claims failed to address whether the involuntary disability separation constituted an adverse employment action. We agree with appellees, however, that whether the involuntary disability separation constitutes an adverse employment action is immaterial. Demonstration of an adverse employment action is one of the elements of a prima facie case of discrimination. *Moody* at ¶ 17. As we noted above, even assuming arguendo appellants could demonstrate all of the elements of a prima facie case of discrimination, they nonetheless failed to put forth any evidence that the legitimate, non-discriminatory explanations presented by appellees were mere pretext. Accordingly, once the burden shifted back to appellants under the *McDonnell Douglas* framework, appellants were unable to carry their burden to show the proffered explanation was pretext. The court did not err, therefore, in granting summary judgment to appellees on all claims. Thus, we overrule appellants' fifth and final assignment of error.

{¶ 50} Based on the foregoing reasons, the trial court did not err in granting summary judgment in favor of appellees on appellants' discrimination claims. Having overruled appellants' five assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

SADLER and BEATTY BLUNT, JJ., concur.

BEATTY BLUNT, J., concurring.

{¶ 51} I join the majority's decision in this case, but I feel it is important to emphasize that the record strongly suggests failures by both ODRC and DYS in structuring and managing the IT Help Desk. The majority correctly concludes that the defendants have met their burden to demonstrate that the plaintiffs lack record evidence to support the claims of disparate treatment, allowing a hostile work environment, and retaliation. But that does not suggest that the defendants are blameless.

{¶ 52} The majority correctly concludes that the record does not include evidence showing that ODRC employees violated ODRC rules or procedures, even though they might have been deemed to have violated DYS rules and procedures. But it is obvious that the lack of a clear chain of agency authority regarding the IT Help Desk created a toxic work culture. It is undisputed that ODRC management conducted a meeting with ODRC

employees to inform them of the procedures required to complain about their DYS colleagues. And while the optics of holding a meeting only with white male ODRC employees about their alleged grievances with two black DYS employees are undoubtedly problematic, without more, that incident alone is insufficient to allow this case to proceed to a jury.

{¶ 53} While the plaintiffs have certainly identified a smell, the record lacks the evidence to show that smell came from a skunk. I accordingly concur with the majority's decision and judgment in this case.

_____